UNITED STATES LIGHT & HEATING CO. v. J. B. M. ELECTRIC CO. et al.

(Circuit Court, W. D. New York. March 25, 1911.)

No. 408.

1. PATENTS (§ 198*)—APPLICATION—ASSIGNMENT—SEAL.
Where assignments of applications for patents were in writing and recited a valuable consideration, it was not material that they were not under seal.
[Ed. Note.—For other cases, see Patents, Cent. Dig. § 277; Dec. Dig. § 198.*]

2. CORPORATIONS (§ 426*)—ASSIGNMENTS—ACT OF PRESIDENT—RATIFICATION BY DIRECTORS.
Where assignments of applications for patents by a corporation, were made by its president and witnessed by a director, who, with the president, formed a majority of the board, and such majority had actual knowledge of the assignments, and the manner of their execution, and the other director was soon after apprised of the assignments, the assignee having acted in good faith thereon and believed that the president had power to

execute the instruments, the board could not, by subsequently refusing to ratify the assignment, affect their validity.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 426.*]

In Equity. Suit by the United States Light & Heating Company against the J. B. M. Electric Company and others. Decree for complainant.

Jones, Addington, Ames & Seibold (Keene H. Addington and George G. Davidson, Jr., of counsel), for complainant.

Kenyon & Kenyon and Alan D. Kenyon, for defendants.

HAZEL, District Judge. The complainant brings this bill to reform the signature to an assignment of application for patent No. 404,271, and remove the cloud of certain conflicting assignments made by the J. B. M. Electric Company to Charles A. Gould, assignor of the Gould Coupler Company, which has charge of the defense herein. By cross-bill application for patent No. 404,272 was brought into the case, and the defendant Gould Coupler Company prays judgment for the removal of a cloud from its title from the same company. Both the complainant and defendant, Gould Coupler Company, claim title to the inventions of J. W. Jepson, which were assigned by him to the J. B. M. Electric Company and which are the subject of this controversy. No question is raised as to the omission of the word "electric" from the corporate name of the J. B. M. Electric Company in the assignments to the complainant's predecessor, and it is admitted by the defendants that such omission was inadvertent, and that the assignments, if valid, may be reformed by the addition of the word "electric" in the name of the assignor. The entire controversy, therefore, relates to the legal and equitable ownership of both applications for patents, which in the one application is for an automatic regulator in a car-lighting system, and in the other for a specific combination of a generator, regulator, and lamp regulator.

The oral evidence is conflicting, but with the assistance of the exhibit letters and documents it is believed that the true relations of the parties have been ascertained. The material facts are substantially as follows: On January 8, 1907, the complainant's predecessor entered into a written contract with Jepson, Berger, and McGary, individuals, who, however, subsequently organized the corporation, the J. B. M. Electric Company, to which company the agreement was transferred, and in which it was set out that Jepson and McGary had invented various systems of electrical distribution; that they transferred such inventions to the Bliss Car Lighting Company, hereinafter called the Bliss Company, which on its part agreed to manufacture and exploit them and pay royalties therefor. Under paragraph 10 the Bliss Company had the right to manufacture and sell all the improvements applicable to the system and included within the scope of the invention while Jepson, Berger, and McGary reserved to themselves the right to grant other rights and licenses not included in the patents issued on said application. Provision was made for paying the assignors for the time consumed in developing the inven-

tions, for the reassignment of patents on termination of the agreement, etc. Subsequently the lighting apparatus was set up and exhibited at a convention of railroad car builders, but it failed to operate successfully, and the complainant claims that as a result of such failure an additional arrangement was entered into, namely, that a certain Bliss-Reed lamp regulator owned by the Bliss Company should be developed along different lines than the booster system of Jepson which had been tried in connection with said lighting system without success. The witness Urban testified that the development of the so-called Bliss regulator was to be under an employment separate and distinct from the said contract and that any improvements made would belong to the Bliss Company. This version is supported by the witness Bliss, but is contradicted by the testimony of Jepson, Berger and McGary. Several conversations held between the parties are contained in the record which tend to show an understanding that any improvements in the lamp regulator would inure to the Bliss Company, and furthermore that the inventions would, therefore, be assigned to it. It is shown that letters subsequently passed between the parties referring to "the new regulator" and in a letter written on June 22, 1907, by the witness Urban, who was general manager of the Bliss Company, allusion was made to "our Bliss-Reed lamp regulator," and he says:

"We also again beg to caution you to keep this matter quiet as much as possible, as you are the only ones outside of our technical force here and our patent department who know anything about this invention of Mr. Bliss."

Under date of July 9, 1907, McGary, writing for the J. B. M. Electric Company, acknowledged receiving materials for the new regulator, and he reports as to the progress made in the work of its development.

In August and September, 1907, Jepson and Berger were requested to make assignments of application for patents to the Bliss Company to which they replied in substance that they would do so at the earliest opportunity. It is shown that Jepson was to receive ten dollars and Berger six dollars per day, including expenses, for actual time spent and work performed for the Bliss Company. After some discussion on September 30, 1907, between Jepson and Berger and complainant's witness Tower, the J. B. M. Electric Company by Mr. Jepson, its president, executed an assignment of the applications for patents in controversy and contemporaneously an agreement to assign improvements, patents and inventions. There was some disputation at this time as to the execution of the agreement and the assignments and as to whether the Bliss Company were entitled thereto, which, however, finally resulted in their execution and delivery. The agreement in terms was independent of the contract of January 8, 1907, and it is claimed by complainant that by the words "inventions and patents" the parties understood future discoveries in connection with the Bliss regulator. The defendants, however, claim that by the use of such terms was implied future work of a different character which Bliss Company had in charge for the Cutler-Hammer Manufacturing Company. But I am persuaded by the evidence that the said agreement related to inventions and discoveries pertaining to the Bliss-Reed regulator system

and the assignments of the applications for patents and the prior correspondence strongly supports this view, especially if we give weight to the testimony of the witness Urban.

On January 16, 1908, the assignments to the Bliss Company were repudiated by the J. B. M. Electric Company on the sole ground that its president Jepson was unauthorized by the board of directors to execute and deliver the same and the draft of assignments to correct the error in the name of the J. B. M. Electric Company in the original assignment was not executed. There was delay in communicating the action of the board of directors, consisting solely of Jepson, Berger, and McGary to the complainant's predecessor, but ultimately the J. B. M. Electric Company expressly declined to be bound by said assignments. Subsequently, on March 28, 1908, the parties entered into another contract terminating their relations, and the contract of January 8, 1907, was thereby canceled. No reference is contained in such later contract regarding the applications for patents in controversy, nor was anything said in reference thereto. The defendants, however, contend that if the assignments to complainant's predecessor were valid the title to applications for patents Nos. 404,271, and 404,272, which were the subject of the assignment, in accordance with the intendment of the later agreement equitably reverted to the defendant Gould Coupler Company, which on July 28, 1908, became the owner by a second assignment of all the inventions and patents owned by the J. B. M. Electric Company for car lighting and to the applications for the patents in controversy. The evidence shows that the applications Nos. 404,271 and 404,272, were not specifically mentioned in said assignments to Charles A. Gould, but nevertheless they are claimed by the assignee to be included therein, and it appears that afterwards the confirmatory assignment without further consideration was made to the Gould Coupler Company by the J. B. M. Electric Company.

[1] 1. It makes no difference in view of the facts that the assignments to the Bliss Company which were in writing were not under seal (Gottfried v. Miller, 104 U. S. 521, 26 L. Ed. 851; Eureka Co. v. Bailey Co., 78 U. S. 488, 20 L. Ed. 209; section 4898, U. S. R. S.[1]) and as they recited a good and valuable consideration the defendant, the Gould Coupler Company, which stands in the place of J. B. M. Electric Company, is concluded at this time to challenge by parol evidence the validity of the assignment to the Bliss Company. Hebbard v. Haughian, 70 N. Y. 54; 6 Amer. & Eng. Enc. of Law (2d Ed.) 778; 16 Cyc. 721. Moreover, the evidence introduced by complainant establishes that the assignments and transfer of the applications in suit were executed for good and valuable consideration duly paid to the J. B. M. Electric Company.

[2] 2. That the board of directors subsequent to the execution and delivery of the said assignment and transfer refused to expressly ratify the action of its president, in view of the delay which followed such assignment and transfer, is not now of material importance. The evidence shows that a majority of the directors of the J. B. M. Electric Company—i. e., Jepson and Berger—had actual knowledge of the assignments and the manner of their execution while McGary was

[1] U. S. Comp. St. 1901, p. 3387.

189 F.—25

soon afterwards apprised of the action of the majority of directors. The corporation did not seasonably repudiate or disapprove the action of the president. Indeed it is proved that Berger witnessed the instrument and under such circumstances the corporation cannot equitably avail itself of the defense that the president was without power to make the transfer. It must be deemed to have acquiesced in the acts of its president, especially as the proof shows that the Bliss Company acted in good faith and believed that the president had power to execute the instrument and to manage the affairs arising out of such inventions or improvements. Authorities abound upholding this view.

3. The contract of January 8, 1907, in my judgment did not include the two applications in controversy, but related to different inventions, and hence the claim of the defendants that the Bliss Company was merely entitled to a license is not sustained. Its title to the inventions and application for patents did not pass to it under the original contract, and therefore the agreement of March 28, 1908, canceling the same did not operate to revert such applications and inventions to the J. B. M. Electric Company.

4. The defendant had constructive notice of complainant's prior recorded assignments and moreover its predecessor Charles A. Gould was apprised of the existence of a certain prior assignment of patents relating to a lamp regulator invented by Jepson and the Bliss Company.

Considering the record in its entirety I am of the opinion that the assignments and transfers of September 30, 1907, to the Bliss Company conveyed the title to the inventions and applications for patents in controversy and that the Gould Coupler Company by its later assignment has neither legal nor equitable title thereto.

A decree in accordance with the prayer of the bill may therefore be entered, with costs.