## STANDARD ROLLER BEARING CO. et al. v. HESS-BRIGHT MFG. CO.

(Circuit Court of Appeals, Third Circuit. September 30, 1921.)

### No. 2604.

1. Corporations ⬥559(1)—Appointment of receivers does not dissolve corporation, and action taken during receivership not void, but voidable.

The appointment of receivers for a corporation, with the usual injunction, does not dissolve the corporation, nor suspend its existence, and action taken by it during the receivership is not necessarily void; but if not in violation of the injunction, in hindrance of the administration of the estate, or in depletion of its property, it is voidable only at the election of a party injured thereby.

2. Corporations ⬥426(7)—Unauthorized modification of contract held ratified by implication.

The officers of a corporation, then in the hands of receivers, without authority from the directors, but with the approval of a majority of the directors, stockholders, and creditors, and of the receivers, executed a modification of a contract giving the corporation rights under patents, thought to be for the benefit of the corporation. For more than a year the receivers operated under the modified contract, with substantial profit. An application by certain stockholders to set aside the action of the officers was withdrawn without objection by the corporation, which was made a

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

party thereto by name and was represented by counsel. *Held*, that the modified contract was ratified by implication, and that the corporation could not repudiate it after discharge of the receivers.

Davis, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Delaware; Hugh M. Morris, Judge.

Suit in equity by the Standard Roller Bearing Company and Brown Brothers & Co. against the Hess-Bright Manufacturing Company. Decree for defendant, and complainants appeal. Affirmed.

For opinion below, see 264 Fed. 516.

Edward D. Robbins, of New Haven, Conn. (Thomas G. Haight, of Jersey City, N. J., of counsel), for appellants.

Robert Fletcher Rogers, of New York City (Richard V. Lindabury, of Newark, N. J., Owen J. Roberts, of Philadelphia, Pa., and J. Edward Ashmead, of Newark, N. J., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. Although many issues were raised and tried below, we regard the controversy on review as narrowed to two major questions. We shall give in outline only enough of the facts to present these questions and show the reasons for our decision, relying on the opinion of the learned trial judge for a statement of the case in detail. 264 Fed. 516.

The Conrad patents, Nos. 822,723 and 838,303, cover at least two types of ball bearings containing a raceway in the rings through which the balls move in continuous surface contact. Hess-Bright Mfg. Co. v. Standard Roller-Bearing Co. (C. C.) 177 Fed. 435; Hess-Bright Mfg. Co. v. Fichtel, 219 Fed. 723, 135 C. C. A. 421. In the type known as "Type A" there is no side-entering slot through which balls can be introduced or forced into the raceway. In Type B there is such a slot. The German owner of the patents granted the Hess-Bright Manufacturing Company, defendant below, an exclusive license for the United States with the right to grant sub-licenses. This corporation then granted the Standard Roller Bearing Company, plaintiff below, an exclusive, non-assignable license, limited, however, to Type B bearings. The Standard Company operated under this license until, coming into financial difficulties, it went into the hands of receivers. Thereupon a question arose whether the license was personal to the Standard Company or extended to its receivers, and whether also there would be advantage to the creditors, in the demand made by war, if the receivers were to acquire the right to manufacture Type A bearings as well as Type B. After negotiations between the Hess-Bright Company on the one hand and the receivers and officers of the Standard Company on the other, the two corporations, on July 8, 1915, entered into an agreement under the hands of their respective officers, modifying the license agreement. This action of the Standard Company was taken with the approval of its receivers, the concurrence of a committee of its creditors, and the knowledge of a majority of its directors and stockholders, but without formal authority by its board of directors. By the agreement thus en-

tered into, known in this litigation as the "supplemental agreement," the terms of the original license were changed by extending to the Standard Company the right to make, use and sell bearings of both types but withdrawing from it the exclusive feature of the right which theretofore it had to make Type B bearings, and also by reforming the terms of the royalty whereby the Standard Company was to receive certain rebates, which later were paid to its receivers in an amount approximating $30,000.

The receivers operated under the license so modified until August, 1916, when a creditors' committee, having evolved a scheme of reorganization, brought a petition to the court of the ancillary receivership asking for authority to execute a release of all rights of the Standard Company under the license and to sell and convey all its assets, property and franchises conformably with a plan of reorganization submitted.

In October, 1916, a stockholders' protective committee intervened and prayed for the removal of the ancillary receivers on the ground, among others, of alleged misconduct in assenting, improvidently and fraudulently, to the modification of the patent license. The outcome of these proceedings was that the court declined to grant the receivers authority to cancel the Hess-Bright license and did not adjudicate the validity of the supplemental agreement but ordered the sale of all assets of the Standard Company except the non-assignable license from the Hess-Bright Company.

Pending this transaction, the Marlin Arms Company (a Connecticut corporation whose name was afterward changed to Marlin-Rockwell Company) acquired ninety-nine and eight-tenths per cent. of the claims against the Standard Company upon terms which returned to its creditors about sixty-six cents on the dollar. This company then purchased, pursuant to a bid made by it and accepted by the court, all the physical assets of the Standard Company. The Marlin-Rockwell Company also acquired during the litigation ninety-nine per cent. of the stock of the Standard Company, whose sole asset after the sale of its physical property was the non-assignable, and therefore non-salable, license from the Hess-Bright Company and whatever rights that had accrued thereunder. Thereafter the receivers were discharged.

On December 9, 1918, the Standard Company, thus stripped of all its property except the license under the Conrad patents and thus newly owned and controlled, brought this suit against the Hess-Bright Manufacturing Company for infringement of the original agreement of license, praying an injunction and an accounting, on the theory that the supplemental agreement withdrawing from the Standard Company the exclusive feature of its right to make and sell Type B bearings was void because conceived and executed in a fraudulent conspiracy between the receivers and the Hess-Bright Company; that Woodward, signing the instrument as president of the Standard Company, had no authority from the board of directors to execute the agreement on the behalf of the company; that the contractual power of the Standard Company was suspended by the receivership and the injunction which accompanied it; that the receivers were without authority from the

court which appointed them either to make or concur in the agreement; and that, in consequence, the exclusive feature of the original license with reference to Type B bearings was preserved to the Standard Company as though the supplemental agreement had not been made, and that the grant of licenses by the Hess-Bright Company to other concerns infringed its license rights. The Hess-Bright Company by its answer denied the charge of fraud and claimed that the receivers of the Standard Company had the power to enter into the agreement and that thereafter the agreement was ratified by its directors and stockholders and was later approved by the court under whose direction the receivers were acting. The trial court found that the charge of fraud was not sustained; that the Standard Company was not deprived of its power to enter into an agreement modifying the terms of the original license either by reason of the appointment of receivers or the injunction which accompanied their appointment; and that, notwithstanding the agreement was entered into without antecedent authority it was afterward ratified by the corporation. Accordingly the bill was dismissed. The plaintiff took this appeal.

The main question at the trial (and here on appeal) is the validity of the supplemental license agreement. That question turns upon many others raised and decided, to all of which we have given careful consideration. In this discussion, however, we shall pass by the minor questions and come directly to what we regard to be the three major questions in the case. The first—and the one underlying the whole structure of the plaintiff's action—is that of fraud between the plaintiff's receivers and the defendant in entering into the supplemental agreement whereby, as it is alleged, the Standard Company was deprived of the trade advantage arising from the exclusive feature of its license and was shorn of large profits. This question, to which a large part of the record was devoted, dropped out of the case on appeal by the acquiescence of the Standard Company in the finding by the trial court that there was no fraud in the transaction. Thus there remains, with reference to the validity of the supplemental agreement, two questions. These relate, first, to the power of the Standard Company in the circumstances to enter into such an agreement; and, if it had, then second, whether, in fact, the Standard Company later ratified the agreement.

If valid execution of the supplemental agreement by the corporation's officers depends on antecedent authority by its board of directors, the case would stop here, for no such authority was given them. If the execution of the instrument by the officers of the corporation depends for its validity on the bare approval which two of the receivers gave it, here is an end to the case, for the approval of two, or of all the receivers did not confer upon its corporate officers power which they as such did not themselves possess. If the validity of the action of the corporation's officers rests finally on approval by the receivers, authorized by the court or later approved by the court, then again the case would go no further, for in the court's many orders we find, contrary to the insistence of the appellee, no such authority or approval. That the Standard Company was, by reason of being in receivership

and under the accompanying injunction, without power to enter into the agreement, which, without more, would be capable of valid enforcement, need not be decided. All these questions, earnestly argued, are aside from the principal one, which is, as we regard it, whether the agreement made in the circumstances is void or is merely voidable; that is, whether it is void in the sense of being wholly without force or effect, or voidable in the sense of being ineffectual until affirmed and ratified. Downs v. Blount, 170 Fed. 15, 95 C. C. A. 289, 31 L. R. A. (N. S.) 1076; Toy Toy v. Hopkins, 212 U. S. 542, 548, 29 Sup. Ct. 416, 53 L. Ed. 644; Ewell v. Daggs, 108 U. S. 143, 149, 2 Sup. Ct. 408, 27 L. Ed. 682.

[1] We are not persuaded that the corporation suffered an entire suspension of its functions and authority over its property by the appointment of receivers. True, acts done in violation of a receivership injunction may be void, but courts are inclined to hold them void only at the election of the injured party. Murray v. Lylburn, 2 Johns. Ch. (N. Y.) 441; Union Trust Co. v. Southern Navigation Co., 130 U. S. 565, 570, 571, 9 Sup. Ct. 606, 32 L. Ed. 1043. Nor have we in mind a case where an act done in violation of such an injunction has been undone by a court upon the application of the wrongdoer. Greenwald v. Roberts, 4 Heisk. (Tenn.) 494. There is a broad distinction between acts of a corporation in receivership which are violative of an injunction, in hindrance of the administration of the estate, or in depletion of its assets, and conduct which depends for its validity on the life of the corporation. The appointment of a receiver does not dissolve the corporation or suspend its existence. Chemical National Bank v. Hartford Deposit Co., 161 U. S. 1, 16 Sup. Ct. 439, 40 L. Ed. 595; Du Pont v. Standard Arms Co., 9 Del. Ch. 315, 320, 81 Atl. 1089. It still is the same corporate entity that it was before. It is clothed with the same franchises and its corporate powers continue to exist, subject in their exercise, of course, to limitations arising out of the changed situation. O. & M. Ry. Co. v. Russell, 115 Ill. 52, 57, 3 N. E. 561; Linn v. Dixon Crucible Co., 59 N. J. Law, 28, 30, 35 Atl. 2; Rosenbaum v. U. S. Credit System Co., 61 N. J. Law, 543, 40 Atl. 591.

[2] As the officers of the Standard Company executed the supplemental agreement without formal corporate authority (though with the knowledge and acquiescence of a majority of the directors, stockholders and creditors), it is clear that the agreement, standing alone, is without legal force. But it is an agreement made for its own benefit by a corporation that was fully alive and has since continued to live. We are of opinion that this agreement is not, because of the lack of formal action by its board of directors, or because the corporation was in receivership, void in the sense of being a nullity, but that it was voidable and therefore capable, if made so by the corporation's subsequent action, of having full legal effect given to the rights and obligations embraced within its terms.

The remaining question is whether later the Standard Company ratified the supplemental agreement and thereby transformed it from a voidable to a valid undertaking.

There is no evidence of an express ratification. But the want of antecedent authority for a corporate act may be cured by ratification implied from subsequent conduct of the corporation, and this, we think, is what happened.

Aside from the implication arising from profits made and received from performance of the supplemental agreement, Knowles v. Northern Texas Traction Co. (Tex. Civ. App.) 121 S. W. 232; United States L. & H. Co. v. J. B. V. Elec. Co. (C. C.) 189 Fed. 382, there was acquiescence in the agreement on the part of the Standard Company for more than a reasonable time, under circumstances which afforded it an opportunity and imposed upon it the duty to disaffirm the transaction if it were so minded and to decline the money benefits which flowed from it. In the proceedings by which the receivers submitted to the court a plan of reorganization of the Standard Company, involving a release of the license and the sale of all its property, a committee of intervening stockholders, as we have before stated, attacked the supplemental agreement and petitioned the removal of the receivers because of their concurrence therein. A committee of creditors intervened, justifying the supplemental agreement and showing that it had been entered into with the approval of their committee and had resulted in substantial profit to the Standard Company. Before this issue could be tried, the petition of the stockholders attacking the supplemental agreement and praying for the removal of the receivers was dismissed by the court on the stipulation of the attorney for the stockholders and attorney for the receivers. The challenge to the validity of the supplemental agreement was thereby withdrawn. This was followed almost immediately by an order of the court, made under arrangement apparently satisfactory to all parties, for the sale of all the property of the Standard Company, except only the Hess-Bright license and another, on the bid of the same attorney who had previously appeared for the stockholders in the attack on the agreement. After the sale had been made, the purchase price paid, and the property conveyed, the receivers were discharged, leaving the Standard Company with the Hess-Bright license as its only asset. Then it was that the Standard Company, by this suit, first challenged the agreement. As pertinent to the question we are considering it should be noted that in all these transactions the Standard Company was brought into court by its corporate name and appeared there in its corporate capacity. It should also be noted that in these transactions, whose ultimate object obviously was the disposition of all the assets of the Standard Company and the winding up of all its affairs, the Standard Company acquiesced in the withdrawal of the attack on the supplemental agreement and thereafter remained silent. Then was its opportunity to repudiate the agreement. If it regarded the Hess-Bright license as an asset, valuable though not assignable, it should have, while its affairs were being closed out, asserted for the benefit of its creditors whatever rights it had under the license. Its failure to speak in repudiation of the agreement under circumstances which clearly called for action on its part, if objection it had, amounted, we think, to an implied ratification of the agreement. This constituted ratification by implication of a voidable agreement

which gave to the agreement the same legal force as though originally made under valid authority.

Finding no error in the proceedings, we direct that the decree below be affirmed.

DAVIS, Circuit Judge (dissenting). In the final analysis the decision in this case rests upon ratification. If the plaintiff in error, expressly or impliedly, ratified the contract, called the "supplemental agreement," that ends this appeal. The agreement was entered into, without the approval or permission of the court, by two ancillary receivers, who were former officers of the corporation but whose terms of office had expired. In violation of the court's order and without necessary antecedent authority, required by the by-laws, they pretended to act for the corporation and also for the court as receivers in executing this agreement. While it was not established that in making this contract there was legal fraud and the plaintiff in error had to abandon that allegation on this appeal, yet in the light of all the facts, this transaction, as well as some others, was, at least, questionable and certainly improvident. If the Standard Roller Bearing Company had been a "going concern" or an individual, the conclusion of this court (in my opinion) would be justified, but to hold that the corporation, under the disability placed upon it by the court's injunctive order, may ratify by implication because it obeyed that order is, in effect, penalizing obedience. This is a novel proposition and not sustained by any adjudicated case to which my attention has been called.

Therefore I am constrained to dissent from the conclusion of my colleagues.