Mitchell, Brewer, Richardson, Adams, Burge & Boughman, PLLC v. Brewer, 2007 NCBC 14

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF CUMBERLAND | 06 CVS 6091 |

MITCHELL, BREWER, RICHARDSON, )
ADAMS, BURGE & BOUGHMAN, )
PLLC; GLENN B. ADAMS; )
HAROLD L. BOUGHMAN; )
JR.; and VICKIE L. BURGE, )
         Plaintiffs )
)
      v. )      **ORDER**
)
COY E. BREWER, JR.; )
RONNIE A. MITCHELL; )
WILLIAM O. RICHARDSON; )
and CHARLES BRITTAIN, )
         Defendants )

[1]     This civil action arises out of the breakup of a law firm organized as a professional limited liability company ("PLLC").  The matter comes before the court upon the Defendants' Motion to Dismiss ("Motion") the various claims ("Claims") stated in the Plaintiffs' Amended Complaint ("Complaint"), pursuant to the provisions of Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)").

[2]     Defendants' Motion raises a number of issues, the most pivotal of which presents a question of first impression in this State.  That issue is whether, upon the dissolution of a PLLC law firm, an unresolved contingent fee case is a firm "asset" in which a member attorney who performed no legal work on such case has distributive rights?

[3]     After considering the arguments, briefs, other submissions of counsel and appropriate matters of record, as discussed below, the court concludes that Defendants' Motion should be DENIED.

> *Everett Gaskins Hancock & Stevens, L.L.P., by E.D. Gaskins, Jr., and Louis Wooten, for Plaintiffs Mitchell Brewer Richardson Adams Burge & Boughman, P.L.L.C., Glenn B. Adams, Harold L. Boughman, Jr., and Vickie L. Burge.*
>
> *Brooks Pierce McLendon Humphrey & Leonard, L.L.P., by Jim W. Phillips, Jr., and Charles F. Marshall, for Defendants Coy E. Brewer, Jr., Ronnie A. Mitchell, William O. Richardson, and Charles Brittain.*

Jolly, Judge.

I.

PROCEDURAL BACKGROUND

[4]     This civil action was filed in Cumberland County Superior Court.  It was designated a complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (respective Sections of the North Carolina General Statutes are cited hereinafter as "G.S."), dated July 14, 2006; and was assigned to the undersigned Special Superior Court Judge for Complex Business Cases, by Order of the Chief Special Superior Court Judge for Complex Business Cases, dated July 25, 2006.

[5]     Plaintiffs filed their Complaint on August 2, 2006.  Defendants filed their Motion on November 1, 2006.  The court heard oral argument on the Motion on January 8, 2007.

II.

FACTS

[6]     Among other things, the Complaint alleges that:

2

(a)     Plaintiff Mitchell, Brewer, Richardson, Adams, Burge & Boughman, P.L.L.C. (the "Firm"), is a North Carolina PLLC that maintains its principal place of business in Cumberland County, North Carolina.  (Compl. ¶ 8.)

(b)     Plaintiff Glenn B. Adams ("Adams") is an individual residing in Cumberland County, North Carolina.  (*Id.* ¶ 1.)

(c)     Plaintiff Harold L. Boughman, Jr. ("Boughman") is an individual residing in Cumberland County, North Carolina.  (*Id.* ¶ 2.)

(d)     Plaintiff Vickie L. Burge ("Burge") is an individual residing in Cumberland County, North Carolina.  (*Id.* ¶ 3.)

(e)     Defendant Coy E. Brewer ("Brewer") is an individual residing in Cumberland County, North Carolina.  (*Id.* ¶ 4.)

(f)     Defendant Ronnie A. Mitchell ("Mitchell") is an individual residing in Cumberland County, North Carolina.  (*Id.* ¶ 5.)

(g)     Defendant William O. Richardson ("Richardson") is an individual residing in Cumberland County, North Carolina.  (*Id.* ¶ 6.)

(h)     Defendant Charles Brittain ("Brittain") is an individual residing in Cumberland County, North Carolina.  (*Id.* ¶ 7.)

(i)     At times material, the individual Plaintiffs and the Defendants included all the members[1] ("Member(s)") of the Firm.  (*Id.* ¶ 8.)

(j)     The individual Plaintiffs bring this action on their own behalf and on behalf of the Firm pursuant to G.S. 57C-8-01.  (*Id.*)

---

[1] For purposes of Defendants' Motion, the court reads Plaintiffs' allegation to mean "members" as defined by G.S. 57C-1-03(14).

3

(k)     In or around June 2005, Adams, Burge, and Boughman (collectively, "Plaintiffs"); and Brewer, Mitchell, Richardson, and Brittain (collectively, "Defendants"), ceased practicing law together (the "Breakup").  (*See* Compl. ¶ 13.)

(l)     The Firm dissolved by agreement on July 1, 2005.  (Compl. ¶ 13.)

(m)     The Members of the Firm never executed a written operating agreement governing their respective rights and duties relative to the Firm.  (*Id.* ¶ 12.)

(n)     At times material, the Firm had legal services contracts with various clients.  Some of those contracts involved ongoing, unresolved contingent fee cases (the "Contingent Fee Case(s)").[2]  (*Id.* ¶ 18.)

(o)     Following the Breakup, Defendants formed a new law firm (the "Defendants' New Firm").[3]  (*Id.* ¶ 16.)

(p)     Defendants have offered legal services through the Defendants' New Firm to former Contingent Fee Case clients of the Firm.[4]  (*Id.*)

(q)     After the Breakup, Defendant Brewer performed an accounting of the Firm's financial status as part of winding up the Firm.  In a memorandum to the Firm's Members, Brewer presented the results of this accounting, which included a proposed allocation of existing debts, obligations and assets of the Firm and a proposed final distribution to Plaintiffs.  The accounting did not

---

[2] Although the parties raise other issues, the Contingent Fee Cases are the primary focus of the dispute between the Plaintiffs and Defendants.
[3] Based upon Exhibit 4 to the Complaint, it appears that Plaintiffs also formed a new law firm.  However, the existence and makeup of Plaintiffs' new firm is not relevant to resolution of Defendants' Motion.
[4] Although the Complaint does not speak to whether and to what extent Contingent Fee Cases went to the Defendants' New Firm, the correspondence attached to the Complaint clearly supports an inference that one or more did.

4

attribute any value to the Contingent Fee Cases. Plaintiffs refused to accept the debt allocation and distributions proposed by Brewer. (Compl. ¶¶ 18-19.)

[7] Plaintiffs do not allege that they performed any legal work on the Contingent Fee Cases. (*See* Compl.)

[8] Plaintiffs filed this civil action, seeking, among other things, an additional distribution of Firm proceeds to reflect their contended share of net Firm assets, including the Contingent Fee Cases, plus monetary damages. In their Complaint, Plaintiffs ask for an accounting to the Firm of the Firm's profits and losses (Claim One); an accounting to Plaintiffs of the Firm's profits and losses (Claim Two); and a distribution to reflect Plaintiffs' contended share of the net value of the Firm's assets (Claim Three). (Compl. ¶¶ 25-40.) Plaintiffs further contend that Defendants' failure to provide a sufficient accounting and distribution, and their refusal to recognize Plaintiffs' entitlement to a share of any fees from the Contingent Fee Cases, constitute both a breach of fiduciary duty (Claim Four) and an unfair and deceptive trade practice (Claim Five). (*Id.* ¶¶ 41-50.)

III.

DEFENDANTS' MOTION

[9] Defendants have moved for dismissal of all Plaintiffs' Claims, contending that:

(a) The Firm, a North Carolina limited liability company ("LLC"),[5] must be dismissed as a party plaintiff to this civil action under Rules 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief

---

[5] Technically, the Firm is a PLLC. However, the relevant statutes treat a PLLC and an LLC identically. *See* G.S. 57C-2-01(c). Accordingly, this Order speaks of the Firm as an LLC.

5

can be granted). Defendants argue that the Firm is not a real party in interest because Plaintiffs lack standing to bring this action on behalf of the Firm, and because Plaintiffs failed to plead that any action of Defendants adversely affected the Firm ("Defendants' Standing Argument");

(b) Defendants are not personally liable for any breach of their duties as managers of the Firm; and, therefore, the Complaint must be dismissed under Rule 12(b)(6) ("Defendants' Immunity Argument");

(c) Plaintiffs have alleged no legal or factual basis to support their recovery of a share of the value of any Contingent Fee Cases; and, therefore, the Complaint must be dismissed under Rule 12(b)(6) ("Defendants' Fees Argument"); and

(d) Claims Four and Five depend upon the viability of one or more of the Complaint's first three Claims, and if those are dismissed then Claims Four and Five also should be dismissed.[6]

[10] For purposes of their Motion, Defendants concede that the court must assume that dissolution of the Firm has occurred. (Defs.' Br. Supp. Mot. Dismiss 3, n.1.)

---

[6] Defendants present substantive argument as to Claims Four and Five only by a single, limited footnote in their Brief. (Defs.' Br. Supp. Mot. Dismiss 5, n.10.)

6

IV.

DISCUSSION

A.

Defendant's Standing Argument.

[11]     Under Rule 17(a), a party lacks standing to sue if it is not a "real party in interest."  A real party in interest is one who "by substantive law has the legal right to enforce the claim in question."  *Whittaker v. Furniture Factory Outlet Shops*, 145 N.C. App. 169, 175, 550 S.E.2d 822, 825 (2001) (citations omitted).

[12]     Inasmuch as Defendants' Standing Argument is made pursuant to Rule 12(b)(1), this court may consider and weigh matters outside of the pleadings in regard to this argument.  *Tart v. Walker*, 38 N.C. App. 500, 502, 248 S.E.2d 736, 737 (1978). Accordingly, the Firm's Articles of Organization ("Articles"), a public document maintained by the Secretary of State pursuant to statutory authority, are properly before the court in the context of Defendants' Standing Argument.

[13]     However, a motion to dismiss for lack of standing is tantamount to a Rule 12(b)(6) motion to dismiss.  Accordingly, in considering Defendants' Standing Argument, the court should determine whether "the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Slaughter v. Swicegood*, 162 N.C. App. 457, 464, 591 S.E.2d 577, 582 (2004).

[14]     The substance of Defendants' Standing Argument is that Plaintiffs (a) withdrew as Members of the Firm prior to the time they brought this action, and G.S. 57C-8-01 provides that membership in an LLC at the time of bringing an action is a

7

prerequisite to bringing suit in that LLC's name; and (b) have not alleged that the Firm was adversely affected by any action of Defendants, as required by precedent, including *Peoples Oil Co. v. Richardson*, 271 N.C. 696, 157 S.E.2d 369 (1967).

[15]    Defendants' First Standing Contention:

(a)    Defendants' Standing Argument contends that, notwithstanding the allegation in the Complaint that Plaintiffs were Members of the Firm when suit was filed (*See* Compl. ¶ 8.), Plaintiffs voluntarily withdrew from the Firm prior to the filing of this action and the Firm therefore should be dismissed as a party plaintiff pursuant to G.S. 57C-8-01.  Defendants point out that Plaintiffs reference their disassociation as a "withdrawal" in correspondence between the parties concerning the Breakup ("Correspondence")[7].  Defendants argue that this constitutes a judicial admission by which Plaintiffs are bound as a matter of law. Further, contrary to the allegation of the Complaint that no operating agreement was ever executed by the Members of the Firm (Compl. ¶ 12), Defendants contend that the substance of the Correspondence is sufficient to constitute an operating agreement pursuant to which Plaintiffs voluntarily withdrew from the Firm.

(b)    Except as may be reflected in the Correspondence, there is nothing on the face of the pleadings or elsewhere of record showing that a withdrawal by Plaintiffs occurred prior to the filing of this action; or that "withdrawal" is defined, anticipated or otherwise dealt with in either the Firm's Articles or a written operating agreement.

---

[7] The Correspondence is attached to the Complaint as Exhibits One through Four, and is properly before the court for Rule 12(b)(6) purposes.  *Woolard v. Davenport*, 166 N.C. App. 129, 601 S.E.2d 319 (2004).

8

(c)     The North Carolina Limited Liability Company Act (G.S. 57C-1-01 to -10-07) (the "Act") provides specific instances in which one's membership in an LLC may cease.  One such instance is when a Member voluntarily withdraws under G.S. 57C-5-06 (the "Voluntary Withdrawal Provision").  The Voluntary Withdrawal Provision provides that "[a] member may withdraw *only* at the time or upon the happening of the events specified in the articles of organization or a written operating agreement" (emphasis added), which must be binding upon all Members (G.S. 57C-1-03(16)).

(d)     Accordingly, "withdrawal" in the context of an LLC is a term that describes an occurrence specifically allowed for and limited by the Act.  Notwithstanding the Plaintiffs' use of such term in the Correspondence, absent any definition in the Articles or an operating agreement as to what constitutes "withdrawal," the court is unable to conclude as a matter of law that Plaintiffs have judicially admitted that they withdrew from the Firm prior to the filing of this action or that the Correspondence constitutes an operating agreement pursuant to which Plaintiffs withdrew from the Firm prior to filing. [8]

(e)     Consequently, the court is unable to conclude as a matter of law that a "withdrawal" from the Firm by Plaintiffs occurred prior to the filing of this action.  Therefore, there is currently no basis upon which to determine that Plaintiffs were not Members of the Firm at the time this action was brought.

---

[8] Defendants argue that a conclusion to this effect is tantamount to a determination that it is impossible for a Member to withdraw from an LLC that does not address "withdrawal" in its articles of organization or a written operating agreement.  (*See* Defs.' Reply Pls.' Resp. Mot. Dismiss 4.)  Although under some circumstances an impasse theoretically may occur, such a situation clearly could be avoided by prior agreement, as encouraged by the Act.  The potential for impasse may be an issue for legislative consideration in due course.  In the instant case, whether the Correspondence constitutes an operating agreement at best presents a question of fact, which is not appropriate for determination as a matter of law under Rules 12(b)(1) or 12(b)(6).

[16]  Defendants' Second Standing Contention:

(a)  Defendants' Standing Argument further contends that the Firm is not a real party in interest because the Complaint does not allege that the Firm was adversely affected by any acts of Defendants.

(b)  To the contrary, however, the Complaint alleges that Defendants' actions were in derogation of the interests of the Firm.  (*See, e.g.*, Compl. ¶ 43.) Accordingly, this contention by Defendants is not well-founded.

[17]  Therefore, in the context of a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), there does not appear on the face of the Complaint, the Correspondence, or any other matters properly before the court an insurmountable bar to Plaintiffs' standing to bring this civil action on behalf of the Firm.  Accordingly, with regard to Defendants' Standing Argument, Defendants' Motion should be DENIED.

B.

Defendants' Immunity Argument.

[18]  Defendants' Immunity Argument contends that the Firm's Articles extinguish any liability that Defendants may have to Plaintiffs, thereby creating an insurmountable bar to the relief sought by Plaintiffs.  Defendants have asked the court to take judicial notice of the Firm's Articles in the context of their Immunity Argument. Plaintiffs have not objected, and the court deems the Articles to be before it for purposes of Defendants' Immunity Argument.  In this regard, the Articles provide:

> To the full extent from time to time permitted by law, no person who is serving or has served as a manager of the limited liability company shall be personally liable in any action for monetary damages for breach of his or her duty as a manager, whether such action is brought by or in the right of the limited liability company or otherwise.  Neither the amendment or repeal of this

10

> Article, nor the adoption of any provision of these Articles of Organization inconsistent with this Article, shall eliminate or reduce the protection afforded by the Article to a manager of the limited liability company with respect to any matter which occurred, or any cause of action, suit or claim which but for this Article would have accrued or risen, prior to such amendment, repeal or adoption.

The Articles further provide that all Members of the Firm are managers. Mitchell, Brewer, Richardson, Adams, Burge & Boughman, PLLC, Ltd. Liab. Co. Articles of Org. ¶¶ 7-8 (Sept. 5, 2000), *available at*:

http://www.secretary.state.nc.us/corporations/filings.aspx?PItemID=5286460#.

[19]    Section 57C-3-32(a)(1) of the Act specifically allows for limiting the liability of managers of an LLC (the "Permissive Liability Limitation Provision"). It provides that "the articles of organization or a written operating agreement may . . . [e]liminate or limit the personal liability of a manager . . . for breach of any duty provided for in G.S. 57C-3-22." However, the Permissive Liability Limitation Provision is operative only as to "monetary damages." G.S. 57C-3-32(a)(1).

[20]    Section 57C-3-32(b) of the Act further provides that personal liability of a manager may not be limited or eliminated for (a) "acts or omissions that the manager. . . knew at the time of the acts or omissions were clearly in conflict with the interests of the limited liability company" or (b) "any transaction from which the manager. . . derived an improper personal benefit."

[21]    The Complaint contains allegations that could support a claim that Defendants either undertook actions or omissions that they knew at the time were clearly in conflict with the interests of the Firm or have entered into transactions from which they derived an improper personal benefit. (*See, e.g.*, Compl. ¶ 43.)

11

[22]     The Complaint also seeks affirmative relief (accounting) in addition to monetary damages.  (Compl. ¶¶ 25-30.)

[23]     Therefore, in light of Plaintiffs' Complaint, neither the provisions of G.S. 57C-3-32 nor the Firm's Articles pose as a matter of law an insurmountable bar to Plaintiffs' Claims against Defendants.  Accordingly, with regard to Defendants' Immunity Argument, Defendants' Motion should be DENIED.

C.

Defendants' Fees Argument.

[24]     Defendants' Fees Argument contends that Plaintiffs' Claims should be dismissed because:

(a)     Plaintiffs withdrew[9] from the Firm and are not entitled to any share of the "fair market value" of the Contingent Fee Cases.  Defendants frame the issue before the court as:  "Can departing lawyers demand a share of the value of unresolved contingency [fee cases] when they performed no work on those cases?"  (*See* Defs.' Reply Pls.' Resp. Mot. Dismiss 1); and

(b)     Even should Plaintiffs be entitled to share in the fair market value of the Contingent Fee Cases, that value must be measured as of the time of Plaintiffs' withdrawal from the Firm[10]; and, at such time, any value is so speculative and uncertain that it is incapable of determination.

---

[9] As discussed herein (*supra* ¶ 10), for purposes of their Motion, Defendants concede that the court must assume that a dissolution of the Firm, rather than a withdrawal by Plaintiffs, has occurred.  However, in their Fees Argument, Defendants again reference the Breakup as a "withdrawal" by Plaintiffs.  Though the court here uses Defendants' language, it treats the Breakup as a dissolution.
[10] *Cf. supra* note 9.

12

[25]   Defendants' First Fees Contention:

(a)   Defendants' Fees Argument first contends that, upon the dissolution of an LLC law firm, a Contingent Fee Case is not a firm "asset" in which a Member attorney has distributive rights unless that attorney in fact performed legal work on that Contingent Fee Case.  In this regard, Defendants argue that pursuant to the ethical mandates of case law and the Rules of Professional Conduct promulgated by the North Carolina State Bar (collectively, the "Rules of Ethics "), legal services contracts ("Engagements") are unique and unlike other contracts.  They contend that, under the Rules of Ethics, upon the dissolution of an LLC law firm, the mechanism for proper sharing by Members of the ultimate fees realized from a Contingent Fee Case is analogous to that of (a) attorneys not affiliated in a law firm, but acting as co-counsel on a Contingent Fee Case, or (b) an attorney seeking a fee after having been discharged from a Contingent Fee Case, *i.e.*, a measuring of the legal services contributed by the respective attorneys upon a *quantum meruit* basis.  *See, e.g.*, *Pritchett & Burch, PLLC v. Boyd*, 169 N.C. App. 118, 609 S.E.2d 439 (2005); *see also* N.C. Rules Prof'l Conduct (hereinafter "RPC"), Rule 1.5[11].  Therefore, Defendants argue,

---

[11] Defendants point out that an exception exists to the *quantum meruit* measure for division of fees between attorneys in the situation where Engagement fees are "to be received in the future for work done when lawyers were previously associated in a law firm."  *RPC*, Rule 1.5, Comment 9 ("Comment 9").  They argue that this exception supports Defendants' position and requires that any attorneys receiving a share of future fees must personally have done work on the Engagement in question.  However, the exception reflected in Comment 9 is silent as to whether (a) a particular attorney must have done some of the firm's legal "work" on an Engagement for which fees are to be received in the future before that attorney may receive any share of such fees, or (b) any attorney who was a member of the firm when the legal "work" was done may share in the future fees.  The court does not construe Comment 9 to support Defendants' argument.  Rather, the more appropriate construction of Comment 9 is that the sharing and division of fees to be received in the future for work done by various attorneys while associated in a law firm is not regulated by the RPC; and such fees may be shared within the firm upon whatever basis the attorneys agree.  At best for the Defendants' position, Comment 9 is ambiguous in the context of the instant dispute.

13

with regard to Contingent Fee Cases the dissolution distribution mechanisms provided by the Act (G.S. 57C-6-04 (winding up) and G.S. 57C-6-05 (distribution of assets)) do not control.

(b)     Accordingly, Defendants contend, since the Complaint fails to allege that Plaintiffs performed legal services on any of the Contingent Fee Cases, as to them Plaintiffs have no rights to recover anything upon dissolution; and their Claims should be dismissed pursuant to Rule 12(b)(6).

[26]    The parties have cited a large number of disparate cases they contend support their respective arguments on this issue.  However, neither party has brought forward any North Carolina authority directly on point, and the court treats this as a matter of first impression in this State.

[27]    The Act provides specific guidelines for the formation (G.S. 57C-2-20) and dissolution (G.S. 57C- 6-01 to -03) of an LLC.  It requires an LLC to file articles of organization (G.S. 57C-2-21 and 9A-03), and allows the Members of an LLC certain latitude to enter into an operating agreement (G.S. 57C-1-03(16), 3-05).  The Act speaks to several instances in which its provisions may be added to or altered by such articles of organization and/or operating agreement.  *See, e.g.*, G.S. 57C-3-02 (stating that a membership interest in an LLC ceases upon the happening of certain events "[u]nless otherwise provided in this Chapter, the articles of organization, or a written operating agreement . . .").  It also provides that certain rights and duties under the Act, such as voluntary withdrawal, are wholly contingent upon such articles of organization or operating agreement.[12] The Act further allows Members to have an interest in the LLC itself, including any share of the profits and losses of the LLC and any right to

---

[12] Such requirements may present practical, but avoidable difficulties.  *See, e.g.*, *supra* note 8.

14

receive distributions of the LLC assets ("Membership Interest") (G.S. 57C-1-03(15));

and makes it clear that such Membership Interest is personal property, and not an

interest in specific LLC property (G.S. 57C-5-01). Accordingly, the Act allows for the

creation of a legal entity that has certain benefits (*e.g.*, liability limitation, potential for

pass-through taxation) and burdens (*e.g.*, compliance with the statutory requirements of

the Act). The fact that the LLC business organization is a law firm does not alter these

provisions of the Act. *See* G.S. 57C-2-01(c) ("[P]rofessionals licensed under the

applicable licensing statute may render professional services through a . . . limited

liability company.")

[28]    In the modern practice of law, absent an agreement to the contrary, it is

axiomatic that when an attorney has a legal and proper equity interest in a law firm, he

or she shares in the assets, profits and/or losses generated by the various

Engagements of that firm. That is true whether the Engagement is (a) for transactional

or litigation services; (b) undertaken by the firm on a fixed, hourly or contingent fee

basis (such as the Contingent Fee Cases at issue here); or (c) worked on by that

particular attorney. In this regard, the court recognizes the ethical considerations and

constraints appropriately imposed upon Engagements by the Rules of Ethics. However,

the court finds no basis for concluding, in the context of a dissolving LLC law firm,[13] that

the Rules of Ethics either prevail over the provisions of the Act or otherwise require that

a member must provide legal services on each such Engagement as a condition

precedent to that Member's right to share in the ultimate distribution of the

Engagement's value within the firm. Rather, upon either withdrawal or dissolution each

---

[13] The court concludes the same would hold true in the context of a dissolving law firm structured as a partnership under the Uniform Partnership Act. *See* G.S. 59-31 to -1107.

15

Member would be entitled to his or her respective share of firm profits and losses from any Engagements, including Contingent Fee Cases, regardless of whether the member provided legal services on a particular Engagement.[14]

[29]    The Act provides that upon dissolution, unless otherwise agreed, an LLC such as the Firm continues in existence while its managers, or others charged with winding up the affairs of the LLC, have a statutory duty to (a) obtain "[a]s promptly as reasonably possible . . . the fair market value for the [LLC's] assets[15]," and (b) distribute the net balance of those assets to the LLC's Members, and others.  G.S. 57C-6-04(b), -05(3).  The requirement that the fair market value of an LLC asset be obtained "as promptly as reasonably possible," and the mechanics of how that is achieved, must be viewed relative to the business the LLC conducts and the types of assets it holds.  The court can find no reason why law firm Engagements, such as the Contingent Fee Cases, are not capable of being liquidated in a manner consistent with these statutory requirements.

[30]    Accordingly, with regard to Defendants' First Fees Contention, the court is unable at this stage to conclude as a matter of law that Contingent Fee Cases are not assets of the Firm in which Plaintiffs have a recoverable interest upon dissolution.[16]

---

[14] Whether the Breakup ultimately is found to be a dissolution (as it is deemed for purposes of the Defendants' Motion), or a withdrawal by Plaintiffs (as contended by Defendants), the primary difference between the two is when and how Plaintiffs' rights of distribution are valued.  *Compare* G.S. 57C-5-07 (distribution upon withdrawal to be fair value of Member's interest as of date of withdrawal), *with* 57C-6-05 (distribution upon dissolution to follow winding up of the LLC).  If a withdrawal is ultimately found to have occurred, valuation of Engagements such as the Contingent Fee Cases would appear to be more problematic for Plaintiffs.  *See infra* ¶ 31 (Defs.' Second Fees Contention).  However, since for purposes of Defendants' Motion the Breakup must be viewed as a dissolution, valuation as of the date of the contended withdrawal by Plaintiffs is not now before the court.

[15]  The Act does not define "assets."  G.S. 57-C-1-01 to -10-07.  Nor do the Firm's Articles.

[16] This matter has potential to present a host of related, complex issues that are not now before the court. For example, what are the various duties, *vis-à-vis* the Firm and the Defendants' New Firm, of Defendant Members who undertake to manage to their conclusion Contingent Fee Cases that follow Defendants to Defendants' New Firm; and how, if at all, would profits or losses realized from a Continent Fee Case

16

[31]     Defendants' Second Fees Contention:

(a)     Defendants' Fees Argument further contends that any interest Plaintiffs may have in the Contingent Fee Cases must be measured as of the date Plaintiffs withdrew from the Firm.

(b)     Defendants argue that the value of those matters at such a time is so speculative and uncertain that it is incapable of determination; and that the Contingent Fee Cases therefore have no value for purposes of distribution to Plaintiffs.

[32]     It is true that facts supporting a finding of withdrawal by Plaintiffs would affect the timing and mechanics of any distribution to Plaintiffs.  *Cf. supra* note 14. However, as previously discussed, for purposes of Defendants' Motion the court must treat the Breakup as a dissolution rather than a withdrawal.

[33]     Regardless of when and how a Member's rights of distribution are to be measured, the court recognizes the validity of Defendants' argument that it is difficult, if not impossible, to value (in terms of either positive or negative value) Engagements such as the Contingent Fee Cases before they become liquidated (*e.g.*, by enforceable settlement or disposition by trial).  This foreseeable difficulty does not, however, dictate that such matters have no value, especially in a dissolution setting.  Notwithstanding Plaintiffs' demand (*see* Compl., Prayer Relief ¶¶ (b)-(c)), asking that the court "determine" and order Defendants "immediately" to pay over to Plaintiffs their respective shares of the dissolved Firm), assigning quantifiable value to such contended

---

ultimately resolved by the Defendants' New Firm be shared between the Firm and the Defendants' New Firm?  Would it be on a *quantum meruit* basis or otherwise?  Further, since the theory underlying the parties' respective positions is not limited to Contingent Fee Cases, how would other Engagements be accounted for between the various Members of the Firm in the context of either withdrawal or dissolution?

entitlements may require that final Firm distributions be delayed until the Contingent Fee Cases are liquidated and finite value is obtained. Such an event appears to be contemplated by the Act, which provides that upon dissolution, the fair market value of the LLC's assets is to be "obtained," "collected" and "distributed"; and that the LLC "shall continue in existence following its dissolution and during its winding up, but shall carry on only that business appropriate to wind up and liquidate its business and affairs." *See* G.S. 57C-6-04(b).

[34] Therefore, with regard to Defendants' Second Fees Contention, the court concludes that, in the context of Defendants' Fees Argument under Rule 12(b)(6), potential difficulty in measuring the "value" of Contingent Fee Cases does not as a matter of law constitute an insurmountable bar to Plaintiffs' Claims.

[35] Accordingly, with regard to Defendants' Fees Argument, Defendants' Motion should be DENIED.

D.

Defendants' Motion to Dismiss Claims Four and Five.

[36] The court having concluded that Defendants' Rules 12(b)(1) and 12(b)(6) Motion to dismiss Plaintiffs' Claims One, Two and Three should be denied, and it finding no independent basis to support Defendants' Motion relative to Plaintiffs' Claims Four and Five, it concludes that Defendants' Motion likewise should be DENIED with regard to Plaintiffs' Claims Four and Five.

V.

CONCLUSION

[37]    Based on the foregoing, it hereby is ORDERED, ADJUDGED and DECREED that:

(a)    Taking the allegations of the Complaint as true, Plaintiffs have not failed to state a claim upon which relief can be granted as to the five Claims stated in the Complaint.  Accordingly, Defendants' Motion to Dismiss pursuant to the provisions of Rules 12(b)(1) and 12(b)(6) is DENIED.[17]

(b)    Until further order of the court, all parties to this action shall maintain either independent financial records or records capable of identification, separation and isolation as to all Contingent Fee Cases, transactions, or other work attributable, by source or otherwise, to the Firm.

THIS, the 8th day of May, 2007.

---

[17] By utilizing the rules of discovery, Defendants may ascertain more precisely the factual details of Plaintiffs' respective Claims, and whether Plaintiffs can prove facts that will entitle them to trial on the merits.  *Sutton v. Duke*, 277 N.C. 94, 176 S.E.2d 161 (1970).