Pierre S. duPont,

*vs.*

Standard Arms Company.

*New Castle, Jan.* 20, 1912.

On termination by the receiver of an insolvent corporation of a pre-existing contract for the services of another as general manager, the latter is entitled to no damages therefor; the possibility of such termination being impliedly within the contemplation of the parties when the contract was made.

The appointment of a receiver for a corporation does not dissolve it, or terminate its legal existence, but suspends the rights and powers of the officers to continue the business of the corporation.

A receiver is not bound by the executory contracts of the corporation over whose property he is appointed, and subject to the control of the Court he may abandon and repudiate them if in his opinion it would not be profitable or desirable to adopt and perform them, and he is entitled to a reasonable time within which to make his election.

A contract made with a corporation for personal services is terminated by the appointment of a receiver for the corporation and as against other creditors the employee is not entitled to payment under the contract after having been discharged by the receiver.

Exceptions by Receiver to Claim for Damages for Breach of Contract of Service. The claim of James J. Hartley against the Standard Arms Company was for salary alleged to be due him as general manager of the company under a contract of employment, consummated verbally, on or about September 16th, 1909, whereby it was agreed that the claimant should occupy the position of general manager of the company and should receive a salary of $333.33 per month for no definite period; but with the understanding that either the Standard Arms Company, the employer, or the claimant, the employee, could terminate the contract upon three months'

notice, given by the party desiring to terminate to the other party; and with the further understanding that in case the employer terminated the claimant's employment without such notice, it should pay him three months' salary. On or about February 27th, 1911, the agreement of employment was so modified as that thereafter the claimant was to receive $233.33 per month in cash and four shares of the preferred stock of the company per month, one of such shares to be contributed by the Standard Arms Company and the other three shares to be contributed by Irenee duPont, personally. The par value of each share of the preferred stock was $100.00. On June 13th, 1911, a receiver was appointed for said company, and on June 17th, 1911, the receiver was authorized to operate the plant until July 1st, 1911, for the purpose of completing certain partially finished work. On June 20th, 1911, the receiver notified the claimant that his services would not be required after July 1st, 1911. It was admitted that all the cash agreed to be paid to said Hartley under both agreements had been paid in full, up to the time of the appointment of the receiver, and that the preferred stock which the company agreed to deliver to him had not been delivered during the months of March, April and May.

The claim was divided into two parts, viz., a claim of $300.00, being $100.00 for each of the months of March, April and May, alleged to be due for back, or unpaid salary accruing prior to the receivership, and which was predicated upon the failure of the defendant company to deliver to him the one share of preferred stock for each of those months. The other part of the claim, amounting to $888.88, being three months' salary, less the amount paid by the receiver for his services from June thirteenth to July first, is for damages which he claims to be due by reason of what he alleges to be a breach of his employment contract committed by the receiver by its letter of June twentieth, notifying Hartley that his services would not be needed after July first.

Exceptions were filed to said claim, the material parts thereof being, as follows:

"Because the said receiver avers that the said Hartley hath been paid in full for all salary due him up to the date of the appointment of the receiver and for all services rendered by him to the Standard Arms Company up to that date, and hath since the date of the appointment of the receiver been paid in full for services rendered to the receiver and in full for salary due during the period when said Hartley was employed by and under the direction of the receiver.

"WHEREFORE the receiver avers that no part of the said claim is due and owing from the said Standard Arms Company, or from the receivership estate of the Standard Arms Company unto the said James J. Hartley and the said claim should be wholly disallowed."

At the hearing the solicitor for the claimant abandoned the claim for $100.00 for each of the months of March, April and May.

*William S. Hilles* and *Robert H. Richards*, for the receiver. The receiver's contention is, that the appointment of a receiver for the Standard Arms Company in an insolvency proceeding is such an intervention of the law as to terminate existing contracts, of which there had been no breach by either party prior to the appointment of such receiver, in such manner as that neither party can be liable to the other for breach of contract, for the reason that the intervention of the law makes it impossible for either party to perform the contract. When both parties are in good faith continuing in the performance of a contract up to an intervention of the Court, which makes the continuation of performance by either of them thereafter impossible, neither party can, in such event, be placed, in the eye of the law, in a better position than the other and neither can claim damages from the other for breach of contract. The contract was in effect dissolved by the sovereign power of the State, and its performance by either party rendered impossible. This result was within the contemplation of the parties when they made the contract and must be deemed an unexpressed condition of their agreement. *People v. Globe Mutual Life Insurance Co.*, 91 *N. Y.* 174; *Le Noir v. Linville Improvement Co.*, 126 *N. C.* 922, 36 *S. E.* 185, 51 *L. R. A.* 146; *Griffith v. The Blackwater Lumber Co.*, 33 *S. E.* 125; *Malcolmson v. The Wappoo Mills*, 88 *Fed.* 680; *Tennis Bros. Co. v. Wetzel*

*& Tyler Ry. Co.*, 140 *Fed.* 193; *Eddy v. Co-operative Dress Assn.*, 3 *N. Y. Civ. Proc. Rep.* 422; *Laucheim v. Clausen Co.*, 12 *Pa. Sup. Ct. Rep.* 55; *Beach on Receivers*, § 328; 34 *Cyc., pp.* 264-5-6-7-8; 7 *A. & E. Enc. L.* (2*d. ed.*) 116. The principle laid down in the above mentioned authorities is reasoned from analogy to the well established proposition that all contracts for personal service are made upon the implied agreement that both the contracting parties will continue to live and do business, and the contract is terminated by the death or sickness of either the employer or the employed, the servant being merely entitled to his services to that date. The appointment of a receiver by the court is considered, in effect, a *vis major* and terminates the contract of employment.

*Reuben Satterthwaite, Jr.*, for the claimant.

James J. Hartley claims that the receiver of the Standard Arms Company could not cancel and annul his contract, or discharge him, without giving him three months' notice, as provided in the contract. It is admitte dthat the receiver did give the said James J. Hartley a notice of ten days, or one-third of a month, and his claim in this case is for two and two-thirds months, being the difference between the notice provided in the contract and the notice actually received. It is submitted that the receiver of an insolvent corporation cannot by notice cancel and render void an executory contract for personal services with said corporation, without rendering said corporation and the receiver thereof liable in damages. *Rosenbaum v. U. S. Credit System Co.*, 61 *N. J. L.* 543; *Spader v. The Mural Decoration Mfg. Co.*, 47 *N. J. Eq.* 18; *Bolles v. Crescent Drug & Chemical Co.*, (*N. J.*) 32 *Atl.* 1061; *Vanuxem, et al., v. Bostwick*, 7 *Atl.* 598; *The Tiffin Glass Co. v. Stoehr*, 54 *Ohio* 157; *Kinsman v. Fisk*, 56 *N. Y. Supp.* 33; *The Chemical National Bank v. The Hartford Deposit Co.*, 156 *Ill.* 522; *s. c.* 161 *U. S.* 1, 40 *Law Ed.* 595; *In re Silverman, et al.*, 101 *Fed.* 219; *Ex parte Pollard*, 19 *Fed. Cas. No.* 11,252; *Revere v. The Boston Copper Co.*, 15 *Pick.* (*Mass.*) 351. The English cases practically all hold that the insolvency of the defendant entitles an employee who has an executory contract with the defendant to prove his claim for damages. In

*re London and Scottish Bank, L. R. 9 Eq. Cas.* 149; *Yelland's Case, L. R. 4 Eq. Cas.* 350; *Reid v. The Explosives Co., Ltd., L. R. 19 Q. B. Div.* 264.

THE CHANCELLOR: On June 13th, 1911, a receiver for the Standard Arms Company was appointed on the ground of its insolvency, and the general statutory powers were conferred upon the receiver without direction to carry on the business. A few days later the receiver was authorized to carry on the business for a short time, in order to complete certain work. At the time of the appointment, Hartley was serving the company as general manager under a contract of service, made by the company, without a definite period, whereby either party could terminate the contract upon giving to the other three months' notice. On June 20th, 1911, the receiver notified Hartley that his services would not be needed after July 1st, 1911, and having worked to that date was paid by the receiver for his services to that time. Hartley claims damages for breach of the contract of employment by the termination thereof by the receiver without three months' notice. His claim is for $888.88, being for three months, less the amount paid by the receiver, for services rendered by Hartley between June 20th, 1911, and July 1st, 1911. It will be seen that the breach of contract occurred subsequent to the appointment of the receiver, and was not, therefore, a right of action existing against the company at the time the receiver was appointed. By the exceptions a question is squarely raised in this State for the first time, so far as the reported cases show. It is claimed by the receiver that the appointment of the receiver of the company on the ground of insolvency was such an intervention of the law as to terminate existing contracts to render service to the company as that neither party could be liable to the other for breach of contract, for the reason that the intervention made it impossible for either party to perform the contract, such intervention being in the eye of the law within the contemplation of the parties to the contract when they made it, and, therefore, rightly deemed to be an unexpressed condition of their agreement. The legal foundation for this position,

with respect to this particular kind of a claim, being one based on a contract for personal services, is that contracts for personal service for a stated period are terminated by the death or sickness of the employer or the employed. On behalf of the creditor, Hartley, it is contended that the receiver could not cancel an executory contract for personal services made with the corporation prior to the appointment, without rendering the receiver liable therefor in damages payable like other debts of the company from the assets of the company. The issue is well defined and the authorites differ radically. Control of the fund arising from the conversion of the property into money furnishes the oppertunity and imposes the duty on the Court to recognize every substantial equity and every existing right in making distribution of the fund. Claims should be allowed upon principles of equity and good conscience which underlie receiverships. But in so doing rights should be determined on legal principles where such exist. Though the contract of Hartley was made with the corporation prior to the appointment of the receiver, the cause of action, if any, arose after the appointment of the receiver. The breach of the contract was the discharging of Hartley by the receiver. If he had been discharged by the company before the appointment of the receiver, he could have maintained a claim against the assets of the company which came to the receiver though his claim be then unliquidated.

The appointment of the receiver did not dissolve the corporation, or cut short its legal existence. *Chemical Bank v. Hartford, etc., Co.*, 161 *U. S.* 1. Being a statutory receiver, the effect of it was to suspend the right and power of its officers to continue the business of the company. The effect of the Delaware statute of 1891, enlarging the jurisdiction of the Court of Chancery over the appointment of receivers for corporations to include cases where insolvency is the sole ground for the appointment, is to transfer to the receiver so appointed the functions of the corporation; and the corporation is therefore necessarily deprived of all management of its property and affairs, except, perhaps, the doing of acts necessary to the perpetuation of its corporate existence, such as elections of offi-

cers; for by the Delaware Act, unless limited by the order of the Chancellor, the receiver so appointed, in addition to conserving and collecting the assets of the company, and prosecuting and defending suits, is given in general language power "to do all other acts which might be done by such corporation and may be necessary and proper." *Chapter* 181, *vol.* 19, *Laws of Delaware.* This is also the legal consequence of the appointment. But even without this statutory or legal consequence, that was in this, and in almost all cases will be, the natural result of the taking possession of all the property and assets of a corporation for the purpose of converting them into money for the payment of its debts and other legal demands. If it be a legal consequence of the appointment of a receiver of an insolvent corporation, that the officers of the company are thereafter without power or right to deal with, use or dispose of the property of the company, the effect on the rights of both parties to the original contract is the same as though the officers had by a judicial order been expressly prevented from dealing with, using or disposing of the assets of the company. *Lenoir v. Linville Improvement Co.*, 126 *N. C.* 922, 36 *S. E.* 185, 51 *L. R. A.* 146, 151.

The right of the receiver to terminate all unfulfilled contracts made by the company before his appointment is clear. He may choose to continue one and terminate another. A receiver is not bound by the executory contracts of the corporation over whose property he is appointed, and subject to the control of the Court he may abandon and repudiate them, if in his opinion it would not be profitable or desirable to adopt and perform them, and he is entitled to a reasonable time within which to make his election. *Wells v. Hartford Manilla Co.*, 76 *Conn.* 27, 38, 55 *Atl.* 599, and cases cited. *See also* 34 *Cyc.* 259. Whether the receiver's termination of unfulfilled contracts gives a right to damages for the breach against the assets of the corporation which has come into the hands of the receiver, may depend on the character of the subject of the contract. If the contract is one of personal service, it is settled that as between individuals, the death of the employer discharges or terminates a contract for personal service. *Clark*

*on Contracts*, 683, *and citations; Yerrington v. Green*, 7 *R. I.* 589; *Chitty on Contracts*, 1076. So it is held that the death of each party to a contract for a term of service is an implied condition of it which effected a legal termination of it; and, therefore, the death of either party did not give a right against the other for damages for such termination.

The appointment of a receiver for an insolvent corporation is in effect the laying of an equitable execution on all its assets for the benefit of all such creditors as may be found to have valid claims against it. 'For the purpose of this case, the appointment of a receiver of a corporation has the same result as the death of a natural person as employer.) This is the view taken by the American Courts, with few exceptions. *People v. Globe Mutual, etc., Co.*, 91 *N. Y.* 174; *Lenoir v. Linville, etc., Co.* (1900) 126 *N. C.* 922, 36 *S. E.* 185; *Eddy v. Co-operative Dress Ass'n.*, 3 *N. Y. Civ. Proc. Rep.* 442; *Loucheim v. Clawson, etc., Co.*, 12 *Pa. Super. Ct.* 55; *Law v. Waldron*, 230 *Pa. St.* 458, 79 *Atl.* 647 (1911).

It is said, however, that inasmuch as the assets of a corporation constitute a trust fund for the benefit of the persons who deal with it, and there may be a possibility that the assets of what appears to be an insolvent company may yet be more than sufficient to pay its debts, and so make a return to the stockholders, therefore, the claim should be allowed. This is held in New Jersey. *Spader v. Mural Decoration, etc., Co.*, 47 *N. J. Eq.* 18, 20 *Atl.* 378; *Rosenbaum v. U. S. etc., Co.*, 61 *N. J. Law*, 543, 40 *Atl.* 591. But this possibility does not affect the question. From a legal point of view the contract is terminated by a *vis major*, the State by its representative, as by the death of a natural person; and the assets of the company are not applicable to payment of damages for the breach of the contract of service resulting from such termination, any more than the assets of a decedent natural person is liable in the hands of the executor or administrator under like circumstances. The receiver is the arm of the Court, the powers of the officers of the company to deal with its affairs are suspended, and the receiver may rightly suspend the executory contracts made by the company. When a receiver so elects, the situa-

tion is the same as when by death the individual employee is stripped of his power to further continue the contract. This possibility of a termination of contracts made with corporations was contemplated by the parties to the contract and was made an unexpressed but implied condition of it. It is the suspension, temporary or permanent, of corporate activities by the act of the Court in taking possession of the property and affairs of the company, which operates to at least suspend the right to continue the service or recover compensation for a termination of the service from the assets which the Court has taken into its charge through its receiver. Here the contract of Hartley was one for personal service as general manager, and his claim was based on his discharge without having received three months' notice. As he was not entitled to serve unless so permitted by the receiver, he cannot recover for compensation for services not rendered.

It should be clear, however, that no opinion is here expressed concerning the right of creditors with claims other than for personal services. Nor is any opinion expressed as to the enforcing of the rights of creditors of a company against its assets in the hands of the receiver, not needed for the payment of such debts and obligations as existed at the date of the appointment. Neither of these questions are before the Court in this case, for there is admittedly an insufficiency of assets to pay all the other claims.

The exceptions to the payment of the claim in whole, or in part, from the assets in the hands of the receiver will be allowed.

Let an order be entered accordingly.