Mooring Capital Fund, LLC v. Comstock N.C., LLC, 2009 NCBC 26.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF WAKE | 07 CVS 20852 |

MOORING CAPITAL FUND, LLC,                )
Individually and derivatively as minority    )
member of COMSTOCK NORTH            )
CAROLINA, LLC, a North Carolina Limited  )
Liability Company,                               )
                          Plaintiff                )
                                                       )          **ORDER ON MOTION TO**
            v.                                        )          **DISMISS, MOTION TO**
                                                       )          **STAY AND MOTION FOR**
                                                       )          **APPOINTMENT OF RECEIVER**
COMSTOCK NORTH CAROLINA, LLC,    )
a North Carolina Limited Liability Company, )
COMSTOCK SERVICE CORP, INC.,        )
a Virginia Corporation, and COMSTOCK   )
HOMEBUILDING COMPANIES, INC.,        )
a Delaware corporation,                        )
                          Defendants           )

THIS CAUSE, designated a complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, by order of the Chief Special Superior Court Judge for Complex Business Cases, is before the court upon (a) the Defendants' Motion to Dismiss the Amended Complaint ("Motion to Dismiss"), pursuant to Rule 12(b)(6), North Carolina Rules of Civil Procedure ("Rule(s)"), or in the Alternative, for a More Definite Statement ("Motion for a More Definite Statement"), pursuant to Rule 12(e); (b) Defendant Comstock North Carolina, LLC's Motion to Stay Proceedings Pursuant to N.C. Gen. Stat. § 57C-8-01(b) ("Motion to Stay"); and (c) Plaintiff's Motion for Appointment of Receiver(s) Pursuant to N.C. Gen. Stat. § 57C-6-02.2 (the "Receiver Motion" or "Plaintiff's Motion")(hereinafter, references to the North Carolina General Statutes will be to "G.S."); and

After considering the arguments, briefs, other submissions of counsel and appropriate matters of record, as discussed *infra*, the court concludes that with respect to the Plaintiff's respective Claims for Relief ("Claim(s)") alleged in the Amended Complaint, Defendants' Motion to Dismiss should be DENIED; Defendants' Motion for a More Definite Statement should be DENIED; Defendants' Motion to Stay should be DENIED; and Plaintiff's Motion for Appointment of Receiver should be DENIED.

> *The Law Office of Horack, Talley, Pharr & Lowndes, PA by D. Christopher Osborn, Esq. and John W. Bowers, Esq. for Plaintiffs Mooring Capital Fund, LLC, Individually and derivatively as minority member of Comstock North Carolina, LLC, a North Carolina Limited Liability Company.*

> *The Law Office of Ragsdale Liggett, PLLC by Walter L. Tippett, Jr., Esq. for Defendants Comstock North Carolina, LLC, a North Carolina Limited Liability Company, Comstock Service Corp, Inc., a Virginia Corporation, and Comstock Homebuilding Companies, Inc., a Delaware Corporation.*

Jolly, Judge.

I.

## THE PARTIES

[1]     Plaintiff Mooring Capital Fund, LLC ("Plaintiff") is a limited liability company ("LLC") organized and existing under the laws of the State of Delaware, with its principal place of business in Vienna, Virginia.

[2]     Defendant Comstock North Carolina, LLC ("CNC") is an LLC organized under the laws of the State of North Carolina with its principal place of business in Wake County, North Carolina.

[3]     Defendant Comstock Service Corp., Inc. ("CSCI") is a corporation organized under the laws of the State of Virginia, currently or formerly doing business in Wake County, North Carolina.

[4] Defendant Comstock Homebuilding Companies, Inc. ("CHCI") is a corporation organized under the laws of the State of Delaware, currently or formerly doing business in Wake County, North Carolina. Defendant CHCI is the majority member of CNC and by virtue of a merger or acquisition is the successor-in-interest to CSCI as manager of CNC ("Manager").

## II.

## PROCEDURAL BACKGROUND

[5] On December 27, 2007, Plaintiff filed a Complaint against Defendants alleging four Claims for Relief ("Claim(s)"): First Claim (Declaratory Judgment); Second Claim (Accounting and Inspection of Corporate Records); Third Claim (Derivative and Individual Action for Breach of Fiduciary Duty, Duty of Good Faith and Duty of Loyalty and Due Care); and Fourth Claim[1] (Dissolution/Frustration of Minority Shareholder Expectations).

[6] On March 14, 2008, Defendants filed their initial Motion to Dismiss the Complaint.[2]

[7] On April 2, 2008, Plaintiff filed an Amended Complaint, also alleging four Claims: First Claim (Declaratory Judgment); Second Claim (Accounting and Inspection of Corporate Records); Third Claim (Derivative and Individual Action for Breach of Fiduciary Duty, Duty of Good Faith and Duty of Loyalty and Due Care); and Fourth

---

[1] This Claim was mislabeled in the Complaint as a "Fourth Counterclaim and Claim against Third Party Defendants." Given the procedural context of this matter, it is apparent that the mislabeling was inadvertent, and that the Claim was intended to constitute a direct Fourth Claim against Defendants. The court construes it accordingly.
[2] Plaintiff's subsequent filing of an Amended Complaint rendered moot the Defendants' initial Motion to Dismiss the Complaint, and therefore the court does not consider it herein.

Claim (Dissolution/Frustration of Minority Shareholder Expectations). Hereinafter, the court will refer to the Amended Complaint as the "Complaint".

[8] On April 17, 2008, Plaintiff filed the Receiver Motion.

[9] On May 2, 2008, Defendants filed their Motion to Dismiss and their alternative Motion for a More Definite Statement.

[10] On May 2, 2008, Defendants also filed their Affirmative Defenses and Answer to the Amended Complaint.

[11] On May 15, 2008, Defendants filed their Motion to Stay.

[12] The respective Motions have been briefed, argued and are ripe for determination.

III.

FACTUAL BACKGROUND

Among other things, the Complaint alleges that:

[13] Beginning in December 2000, Plaintiff became a minority member of CNC by making investments of $125,000 and $50,000 in December 2000 and July 2001, respectively. Plaintiff is a "Priority Member" of CNC, as defined in a Second Amended and Restated Operating Agreement (the "Operating Agreement")[3] dated December 31, 2000. The Operating Agreement governs CNC's operations.

[14] The Operating Agreement provides that 45 days after the close of each fiscal quarter, the Manager shall provide Members with internally prepared un-audited income statements and balance sheets.[4] In addition, the Manager is required to distribute annual income statements reviewed by an independent accounting firm to

---

[3] Compl., Ex. A.
[4] *Id.*, ¶ 17.3.

Members no later than the 30th day of May the following year, and monthly sales reports no later than 30 days after the end of each month.[5]

[15]     Despite repeated requests, Plaintiff has not received the following materials or documents:[6]

     a.     Annual income statements reviewed by an independent accounting firm for the years ending December 31, 2003, 2004, 2005, and 2006;

     b.     Consistent or regular distribution of monthly sales reports (the only one in the current year having been received July 20, 2007, following a specific request); and

     c.     Consistent or regular distribution of quarterly statements (the last having been received for the quarter ending March 31, 2007).

[16]     Based on the internal statement provided for the year ending December 31, 2006, CNC had profits/retained earnings of $4,980,000.  This amount of profit would have been sufficient to return the initial capital and pay a 20% per annum cash on cash return to Plaintiff as a Priority Member.  However, the Manager has failed to distribute profits to the Priority Members.

[17]     Moreover, CHCI purchased certain other Priority Members' interests at a 6.5% per annum cash on cash return, whereas actual profits would have provided a substantially higher return.  Based on profits and retained earnings, CNC should have been able to return the initial capital and pay a 20% per annum cash on cash return to the Priority Members.

---

[5] *Id.*
[6] Compl.

[18]     Though no distributions have been made to the remaining Priority Member, the Manager appears to have made unauthorized distributions to itself and affiliated entities, as indicated on the internal statement for the year ending December 31, 2006.  This statement indicates net distributions to CHCI and CSCI of $1,781,000, while the Manager should instead have contributed on a net basis $2,342,000 in cash to purchase the equity interests of Priority Members other than Plaintiff.

[19]     CHCI and CSCI have caused CNC to operate for their own benefit and protection and without regard to the interests of minority members, including Plaintiff.

[20]     CHCI and CSCI are or have been acting as manager of CNC and have failed to take action to enforce the rights and properly represent the interests of CNC and its individual members.

[21]     CHCI and CSCI have grossly mismanaged CNC, by according themselves preferential treatment either in the repurchase of other equity interests in the company, or in the taking of compensation or profit to the detriment of Plaintiff and other minority members.

[22]     Neither CHCI nor CSCI has made any distributions to Plaintiff as a Priority Member of CNC.  Instead, CHCI and CSCI intentionally made wrongful and unauthorized distributions of CNC funds to themselves or related entities in violation of the terms of the Operating Agreement.  The acts and omissions of CHCI and/or CSCI were in bad faith, outside the scope of authority granted under the operating agreement, in direct conflict with and against the best interests of CNC, and have resulted in CHCI and/or CSCI deriving an improper personal benefit.

IV.

THE MOTIONS

A.

Defendants' Motion to Dismiss -- Rule 12(b)(6)

[23]     The Motion to Dismiss seeks dismissal of the Amended Complaint, in part or in whole, pursuant to Rule 12(b)(6).[7]  Dismissal of an action pursuant to Rule 12(b)(6) is appropriate when the complaint fails to state a claim upon which relief can be granted.

[24]     When deciding a Rule 12(b)(6) motion, the well-pleaded allegations of the complaint are taken as true and admitted, but conclusions of law or unwarranted deductions of facts are not admitted.  *Sutton v. Duke*, 277 N.C. 94, 98 (1970).

[25]     A complaint fails to state a claim upon which relief can be granted when either (a) the complaint on its face reveals that no law supports the plaintiff's claim, (b) the complaint on its face reveals the absence of facts sufficient to make a good claim or (c) some fact disclosed in the complaint necessarily defeats the plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986).  However, a complaint should not be dismissed for failure to state a claim upon which relief can be granted unless it (a) does not give sufficient notice to the defendant of the nature and basis of the plaintiff's claim or (b) appears beyond a reasonable doubt that the plaintiff could not prove any set of facts in support of his claim that would entitle him to relief.  *Sutton v. Duke*, 277 N.C. at 108.

---

[7] In the alternative, Defendants seek a more definite statement, pursuant to Rule 12(e).

[26]     When determining whether a complaint states a claim upon which relief can be granted in the context of a Rule 12(b)(6) motion, the court may consider documents that are the subject of the action and specifically referenced in the complaint.  *See Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60-61 (2001) ("This Court has further held that when ruling on a Rule 12(b)(6) motion, a court may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant"); *Robertson v. Boyd*, 88 N.C. App. 437, 441 (1988) ("Because these documents were the subjects of some of plaintiffs' claims and plaintiffs specifically referred to the documents in their complaint, they could properly be considered by the trial court in ruling on a motion under Rule 12(b)(6)").  Consequently, the documents attached as exhibits or otherwise referred to in the Complaint in this action are deemed to be before the court for Rule 12(b)(6) purposes.

1.

Discussion

[27]     Defendants contend generally that the Plaintiff's Claims fail to state any Claim upon which relief can be granted because, in part, CSCI and CHCI have limited liability as members and managers of CNC, which is an LLC.  As such, Defendants argue, the Complaint should be dismissed pursuant to Rule 12(b)(6).

[28]     Plaintiff argues that neither CSCI nor CHCI has limited liability for the alleged acts and/or omissions complained of by Plaintiff.

[29]     In North Carolina, a member or manager of an LLC enjoys immunity from liability for the obligations of an LLC, although under certain circumstances a member or

manager may become personally liable by reason of that person's own conduct. G.S. 57C-3-30(a). Absent an agreement to the contrary, member-managers generally are shielded from liability when acting as LLC managers. *Hamby v. Profile Products, LLC*, 361 N.C. 630, 638 (2007) (citing G.S. 57C-3-30(a). Further, an LLC's operating agreement can provide for rules that are in addition to or different from the default rules of Chapter 57. *Id.* at 636, citing Russell M. Robinson, II, *Robinson on North Carolina Corporate Law* § 34.01, at 34-2 to -3 (rev. 7th ed. 2006).

[30]     The managers of an LLC may also be entitled to the protections of the "business judgment rule."[8]

[31]     Each member of an LLC has the right, subject to such reasonable standards (including standards governing what information and documents are to be furnished, at what time and location and at whose expense) as may be set forth in the articles of organization or a written operating agreement, to obtain from the limited liability company certain business and financial information of the company. G.S. 57C-3-04. In this regard, however, managers "have the right to keep confidential from

---

[8] *See*, *e.g.*, G.S. 57C-3-22(d) ("A manager is not liable for any action taken as a manager, or any failure to take any action, if the manager performs the duty of his office in compliance with this section.") and G.S. 57C-3-22(b) ("A manager shall discharge his duties as manager in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in the manner the manager reasonably believes to be in the best interests of the limited liability company. . . ."). Such language suggests application of the business judgment rule, a matter of common law in North Carolina, to limited liability companies. The rule applies in addition to the North Carolina Business Corporation Act (the "NCBCA"), G.S. 55-1-01 to -17-05, and creates an evidentiary presumption that directors acted reasonably and fairly in discharging their corporate duties. *State ex rel. Long v. ILA Corp.*, 132 N.C. App. 587, 601 (1999). The *Long* court described the business judgment rule as follows:

> [It] creates, first, an initial evidentiary presumption that in making a decision the directors acted with due care (*i.e.*, on an informed basis) and in good faith in the honest belief that their action was in the best interest of the corporation, and second, absent rebuttal of the initial presumption, a powerful substantive presumption that a decision by a loyal and informed board will not be overturned by a court unless it cannot be attributed to any rational business purpose.

*Id.* at 602 (quoting Russell M. Robinson, II, Robinson on North Carolina Corporation Law § 14.6 at 281 (5th ed. 1995)).

members who are not managers . . . trade secrets or other information the disclosure of which the managers in good faith believe is not in the best interest of the limited liability company." G.S. 57C-3-04(e).

[32]     A member, manager, director or executive of an LLC may become personally liable by reason of that person's own acts or conduct.  G.S. 57-C-3-30(a). Further, an LLC's operating agreement is not permitted to limit, eliminate or indemnify against the liability of a manager, director or executive for (a) acts or omissions that the manager, director or executive knew at the time of the acts or omissions were clearly in conflict with the interests of the limited liability company or (b) any transaction from which the manager, director or executive derived an improper personal benefit.  G.S. 57C-3-32.

[33]     While the business judgment rule limits the liability of member-managers when acting on behalf of an LLC, this liability is not limited when managers act outside the scope of managing the LLC.  *Hamby v. Profile Products, LLC*, 361 N.C. at 637, n.1. Defendant's Motion to Dismiss rests on whether Defendants, as majority shareholders in CNC, acted outside the scope of their authority or failed to act in good faith.

[34]     Defendants' contention that they are shielded from all liability is contrary to G.S. 57C-3-30(a), which provides that a member or manager may become personally liable by reason of personal acts or conduct.

[35]     As did the defendants in *MBRABB v. Brewer*, 2007 NCBC 14 (N.C. Super. Ct. May 8, 2007), Defendants here attempt to couple a limitation of liability clause in the Operating Agreement[9] with G.S. 57C-3-32 to argue they are not personally liable for any breach of their duties as managers of CNC.  However, if a complaint contains

allegations that can support a claim that LLC managers took actions clearly in conflict with the interests of the LLC or entered into transactions from which they derived an improper personal benefit, there is potential for liability.

[36]     Here, the Complaint alleges that the CNC Manager appears to have made unauthorized distributions to itself and affiliated entities.  It points to internal financial statements as support.  These actions, Plaintiff alleges, are rooted in the theory that CHCI has caused CNC to operate for CHCI's own benefit and without regard for the interest of Plaintiff and other minority members.  As discussed *infra*, the court concludes that the Complaint contains allegations that support a claim that Defendants either undertook actions or omissions they knew at the time were clearly in conflict with CNC's interests, or entered into transactions from which they derived an improper personal benefit.

a.

Plaintiff's First Claim – Declaratory Judgment

[37]     Defendants contend that Plaintiff's First Claim should be dismissed pursuant to Rule 12(b)(6), as there is no controversy as contemplated by G.S. 1-253.

[38]     Plaintiff responds that it properly has alleged facts which permit the seeking of a declaratory judgment as to the value of Plaintiff's ownership interest in CNC and the interpretation of the Operating Agreement.  Specifically, Plaintiff's First Claim alleges existence of a dispute as to the value of Plaintiff's ownership interest in CNC, as well as a dispute as to the interpretation of the pertinent terms of the Operating Agreement.[10]

---

[9] Compl., Ex. A, 10.
[10] Compl. ¶ 36.

[39]     The Uniform Declaratory Judgment Act, G.S. 1-253, et seq. (the "Act"), gives courts of record within their respective jurisdictions the power to declare rights, status and other legal relations, whether or not further relief is or could be claimed. *Lide v. Mears*, 231 N.C. 111, 117 (1949), *citing* G.S. 1-253. The Act requires the presence of a justiciable controversy, where the pleadings demonstrate a real controversy and the need for a declaration of rights. *State ex rel. Hunt v. N.C. Reinsurance Facility*, 49 N.C. App. 206, 213 (1980). When there is a dispute between parties as to the interpretation of a written instrument, declaratory judgment actions are appropriate. *LDDC, Inc. v. Pressley*, 71 N.C. App. 431, 434 (1984).

[40]     Upon consideration of the respective allegations in the Complaint, and in the context of Rule 12(b)(6), the court is unable to conclude as a matter of law that (a) the Complaint fails to give sufficient notice to the Defendants of the nature and basis of the Plaintiff's First Claim, or (b) that it appears beyond a reasonable doubt that the Plaintiff could not prove any set of facts in support of its First Claim that would entitle it to relief.

[41]     Therefore, with regard to Plaintiff's First Claim, Defendants' Motion to Dismiss should be DENIED.

b.

<u>Plaintiff's Second Claim – Accounting and Inspection of Corporate Records</u>

[42]     Defendants contend that Plaintiff's Second Claim should be dismissed pursuant to Rule 12(b)(6) as it is brought under the NCBCA.

[43]     While first erroneously citing Chapter 55 of the North Carolina General Statutes, Plaintiff's Second Claim has since been amended to reference Chapter 57.

[44]     Defendants next contend that Plaintiff is not entitled to the information it has requested.

[45]     Plaintiff argues that this claim is proper under the requirements of Chapter 57C.

[46]     As discussed *supra*, managers have a limited right to keep some information confidential.  However, Chapter 57 expressly permits disclosure of general financial information.  G.S. 57C-3-04(a).  While Plaintiff did request broad access to all records and an accurate accounting of revenues, income, debts, obligations, liabilities, distributions and assets, it is alleged that Defendants failed to respond to the request at all.

[47]     Upon consideration of the respective allegations in the Complaint, and in the context of Rule 12(b)(6), the court is unable to conclude as a matter of law that (a) the Complaint fails to give sufficient notice to the Defendants of the nature and basis of the Plaintiff's Second Claim, or (b) that it appears beyond a reasonable doubt that the Plaintiff could not prove any set of facts in support of its Second Claim that would entitle it to relief.

[48]     Therefore, with regard to Plaintiff's Second Claim, Defendants' Motion to Dismiss should be DENIED.

c.

Plaintiff's Third Claim – Derivative and Individual Action for Breach of Fiduciary Duty, Duty of Good Faith and Duty of Loyalty and Due Care

[49]     Defendants contend that Plaintiff's Third Claim should be dismissed pursuant to Rule 12(b)(6), as it also is brought under the NCBCA.

[50]     While first erroneously citing Chapter 55 of the North Carolina General Statutes, Plaintiff's Third Claim has since been amended to reference Chapter 57C.

[51]     Defendants further contend that Plaintiff's Third Claim fails to comply with G.S. 57C-8-01, as a derivative action, and is not permitted under the Operating Agreement.  Defendants argue that accordingly, the Third Claim should be dismissed for failure to show that (a) Plaintiff lacks authority to cause the LLC to sue in its own right and (b) particular efforts made by Plaintiff to get the desired result failed. Defendants' argument in substance is one to the effect that Plaintiff does not have standing to state a derivative action in behalf of the LLC.

[52]     In response, Plaintiff argues that this Claim is proper under the requirements of Chapter 57C.  Specifically, Plaintiff replies that its minority status alone shows that Plaintiff lacks the authority to cause CNC to sue in its own right; and it therefore has standing to bring this Claim.[11]  Likewise, Plaintiff contends that its allegations regarding repeated requests for financial information relating to CNC having gone unresponded to are sufficient to support, in a Rule 12(b)(6) context, Plaintiff's Claim that its prelitigation demands of right were frustrated by one or more Defendants. Plaintiff further argues that it should be entitled to conduct discovery with regard to its

---

[11] "Standing" refers to whether a party has a sufficient stake in an otherwise justiciable controversy. Under Rule 17(a), a party lacks standing to sue if it is not a "real party in interest."  A real party in interest is one who "by substantive law has the legal right to enforce the claim in question." *Whittaker v. Furniture Factory Outlet Shops*, 145 N.C. App. 169, 175 (2001) (citations omitted).  Pursuant to G.S. 57C-8-01(a) and G.S. 57C-8-01(b), a derivative action in behalf of an LLC is appropriate if (i) the plaintiff does not have authority to cause the LLC to sue in its own right, (ii) the plaintiff was a member of the LLC at the time the action was brought and at times material and (iii) the member-plaintiff alleges with particularity the efforts made to obtain the desired action from those with authority over actions of the LLC.  For purposes of the Motion to Dismiss, the court deems the Plaintiff to have been a member CNC at the time this action was filed.  Plaintiff alleges that it did not constitute a majority of the Members of CNC and therefore did not have authority to cause CNC to bring any Claims in its own behalf.  However, it contends it did have standing pursuant to G.S. 57C-8-01(a) and G.S. 57C-8-01(b) to allege appropriate derivative Claims in behalf of CNC.

allegations, and that a Rule 12(b)(6) dismissal, on either procedural or substantive grounds, is premature and inappropriate.

[53]     Here, the court is forced to conclude that pursuant to G.S. 57C-8-01, Plaintiff has derivative standing to state the Third Claim.  Further, the Complaint alleges with sufficient particularity the actions and controversies of which Plaintiff complains and the respective demands made by the Plaintiff.  Accordingly, in the context of Rule 12(b)(6), the court is unable to conclude as a matter of law that (a) the Complaint fails to give sufficient notice to the Defendants of the nature and basis of the Plaintiff's Third Claim or (b) that it appears beyond a reasonable doubt that the Plaintiff could not prove any set of facts in support of its Second Claim that would entitle it to relief.

[54]     Therefore, with regard to Plaintiff's Third Claim, Defendants' Motion to Dismiss should be DENIED.

d.

Plaintiff's Fourth Claim – Dissolution/Frustration of Minority Shareholder Expectations

[55]     Defendants contend that Plaintiff's Fourth Claim also fails to comply with the requirements of a derivative action under G.S. 57C-8-01 and the Operating Agreement.  This is substantively a standing argument, which the court has resolved in Plaintiff's favor in its discussion, *infra*, of Plaintiff's Third Claim.

[56]     Defendants also contend that Plaintiff's Fourth Claim regarding dissolution must be dismissed pursuant to Rule 12(b)(6) because dissolution would be in violation of the Operating Agreement.

[57]     Plaintiff responds that the Operating Agreement plainly states, "*[e]xcept as may be provided by the Act*, no suit or other action brought by a Member against the

Manager or Company shall cause the termination or dissolution of the Company. . . ." (emphasis added by Plaintiff).[12] The Operating Agreement defines the "Act" as the "North Carolina Limited Liability Company Act, General Statutes of North Carolina Section 57C-1-01, et. seq., as amended from time to time, and any successor law or laws."[13]

[58] Plaintiff's Fourth Claim is governed by G.S. 57C-6-02, which states:

> [A] superior court may dissolve a limited liability company in a proceeding by . . . [a] member if it is established that (i) the managers, directors or any other persons in control of the [LLC] are deadlocked in the management of the affairs of the [LLC], the members are unable to break the deadlock, and irreparable injury to the [LLC] is threatened or being suffered, or the business and affairs of the [LLC] can no longer be conducted to the advantage of the members generally, because of the deadlock; (ii) liquidation is reasonably necessary for the protection of the rights or interests of the complaining member; (iii) the assets of the [LLC] are being misapplied or wasted; or (iv) the articles of organization or a written operating agreement entitles the complaining member to dissolution of the [LLC] . . . .

[59] Here, Plaintiff has alleged facts that suggest dissolution may be reasonably necessary for the protection of the minority's rights and interests, and that the assets of the LLC are being misapplied or wasted.

[60] Accordingly, in the context of Rule 12(b)(6), the court is unable to conclude as a matter of law that (a) the Complaint fails to give sufficient notice to the Defendants of the nature and basis of the Plaintiff's Fourth Claim, or (b) that it appears beyond a reasonable doubt that the Plaintiff could not prove any set of facts in support of its Fourth Claim that would entitle it to relief.

---

[12] Compl., Ex. A ¶ 7.11(c).
[13] *Id.* at ¶ 1.1.

[61]     Therefore, with regard to Plaintiff's Fourth Claim, Defendants' Motion to Dismiss should be DENIED.

2.

Conclusion

[62]     The allegations of Plaintiff's First, Second, Third and Fourth Claims are sufficient to give Defendants notice of the nature and basis of each of these Claims. Further, the court is unable to conclude as a matter of law that on the face of the Complaint there is no set of facts that might be proven that would support each of these Claims. Accordingly, this case is not appropriate for a determination under Rule 12(b)(6) that there can be no liability to Plaintiff under any of these Claims. To dismiss any of the Claims at this point would be to "go too fast too soon." *Sutton v. Duke*, 277 N.C. at 108. By utilizing discovery, Defendants may be able to ascertain more precisely the details of Plaintiff's Claims and whether it can prove facts which will entitle it to have a jury decide the merits of its Claims. *Id.* If there then exists a good faith contention that Plaintiff cannot prove sufficient facts as to any such Claim, Defendants may seek relief through good-faith utilization of Rule 56 or other suitable procedural device.

B.

Defendant's Motion for a More Definite Statement -- Rule 12(e)

[63]     In the alternative to Rule 12(b)(6) dismissal of all Claims, Defendants move the court for a more definite statement pursuant to Rule 12(e).

[64]     Rule 12(e) allows a party to move for a more definite statement before interposing his responsive pleading if a pleading to which a responsive pleading is

permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading.

[65]     Rule 8(a)(1) requires a pleading setting forth a claim to contain a short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences or series of transactions or occurrences intended to be proved showing that the pleader is entitled to relief.

[66]     In its discussion of Defendant's Motion to Dismiss, *supra*, the court has concluded that each of the Plaintiff's four Claims are stated in a manner sufficient to give Defendants notice of the nature and basis of each of the Claims, as required by Rule 8(a)(1).

[67]     Accordingly, the Defendants' Motion for a More Definite Statement should be DENIED.

## C.

## Defendant CNC's Motion to Stay

[68]     Defendant CNC seeks a stay of this civil action until such time as it has completed an investigation into accounting issues that it argues should be pivotal in resolving various claims of the Plaintiff as reflected in the Complaint.

[69]     In support of its Motion to Stay, Defendant CNC contends that:

a.     The case involves derivative claims plead pursuant to G.S. 57C-8-01;

b.     The claims of the Complaint will turn on accounting issues that could be resolved through a review of CNC's books;

c. CNC has engaged the services of PriceWaterhouseCoopers, LLP ("PWC") to investigate the charges made in the Complaint to determine if Plaintiff's claims (i) have a basis in fact and (ii) will serve the interests of judicial economy; and

d. Staying this litigation pending completion of PWC's investigation will conserve the court's and parties' resources without undue delay.

[70] Defendant argues a stay will benefit the Plaintiff as it will save Plaintiff time and money Plaintiff would otherwise expend for discovery and litigation.

[71] Plaintiff contends the Motion to Stay should be denied for the following reasons:

a. To Plaintiff's substantial prejudice, CNC did not commence an investigation into the claims and/or allegations for a period of almost eight months;

b. The purported investigation of CNC by PWC is merely a "review" of CNC's financial statements as of December 31, 2007, and will not adequately and completely address Plaintiff's non-derivative charges and/or allegations;

c. In the event that the "investigation" of CNC reveals that Plaintiff's allegations are meritorious, CNC has not provided the court with any assurance that CNC is willing to accept the findings of PWC as binding and make appropriate monetary distributions to Plaintiff and end litigation;

d. Given the public statements regarding CHCI's long-term viability, any delay in these proceedings will be to Plaintiff's detriment and prejudice; and

  e.  CHCI is already a client of the accounting firm retained by CNC to conduct the "investigation."

[72] If an LLC commences an investigation of the charges made in the complaint of a member's derivative action, the court may stay the proceeding until the investigation is completed. G.S. 57C-8-01(b); *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 396 (2000). A trial court's denial of a motion to stay is subject to an abuse of discretion standard of review. *Park East Sales, LLC, v. Clark-Langley, Inc.*, 186 N.C. App. 198, 202 (2007).

[73] CNC officially commenced an investigation with PWC into Plaintiff's claims and allegations on May 14, 2008,[14] despite written requests to CNC as early as September 18, 2007,[15] and a filed Complaint dated December 27, 2007.

[74] The engagement letter entered into by CNC and PWC pursuant to this investigation, while labeled an investigation agreement, calls for a "review" of CNC's financial statements by PWC.[16]

[75] It is not clear that the PWC review will address non-derivative allegations of Plaintiff, *i.e.*, interpretation of the pertinent terms of the Operating Agreement and Plaintiff's Claims for Accounting and Inspection of Corporate Records; Breach of Fiduciary Duty, Duty of Good Faith and Duty of Loyalty and Due Care; and Dissolution/ Frustration of Minority Shareholder Expectations.[17]

[76] The court concludes that the investigation of CNC by and through PWC, pursuant to G.S. 57C-8-01(b), will not address all of Plaintiff's Claims. As such, PWC's

---

[14] Br. Supp. Defs.' Mot. to Stay, Ex. B.
[15] Pl.'s Resp. Defs.' Mot. Stay, 2.
[16] Br. Supp. Defs.' Mot. to Stay, Ex. B.
[17] Compl.

investigation does not provide an adequate basis upon which to grant Defendant CNC's Motion to Stay at this stage of the civil action.

[77]    Therefore, in the exercise of its discretion, the court concludes that Defendant CNC's Motion to Stay should be DENIED.

D.

Plaintiff's Receiver Motion

[78]    In its Receiver Motion, Plaintiff seeks the appointment of one or more receivers to manage the financial affairs of CNC in the best interest of its members and creditors.  In particular, Plaintiff requests that a receiver be appointed for the purpose of overseeing CNC's assets, as well as the intake and distribution of funds by CNC (and its member-managers), so as to confirm that asset management and intake and distribution of funds comports with the Operating Agreement in effect, as well as applicable law.

[79]    In support of its motion, Plaintiff contends:

a.      CNC is an LLC organized under the laws of the State of North Carolina with its principal place of business in Wake County;

b.      Plaintiff is a minority member of CNC;

c.      Plaintiff's Fourth Claim for Relief seeks dissolution of CNC pursuant to G.S. 57C-6-02; and

d.      Certain members of CNC have operated to frustrate the expectations of Plaintiff as a minority member in CNC.  In this regard, Plaintiff further alleges that it has been effectively excluded from the management or operation of CNC and has not received complete information with regard to the

accounting of CNC.  Plaintiff also alleges that dissolution and/or liquidation of CNC is reasonably necessary for the protection of the rights or interests of Plaintiff and any other minority members thereof.[18]

[80]     A receiver for an LLC may be appointed by a trial court both pursuant to statute and the trial court's inherent authority.  *Barnes v. Kochhar*, 178 N.C. App. 489, 499 (2006).  The court, in a judicial proceeding brought to dissolve a limited liability company, may appoint one or more receivers to wind up or to manage the business and affairs of the limited liability company.  G.S. 57C-6-02.2(a).  Such a decision is subject to the court's discretion.  *Barnes v. Kochhar*, 178 N.C. App. at 500.  Partial receivership may be a legal remedy.  *See, e.g., Lenoir v. Linville Imp. Co.*, 126 N.C. 922, 931 (1900).

[81]     A receiver may be appointed before judgment on the application of either party when the moving party establishes an apparent right to property which is the subject of the action and is in possession of the adverse party, and the property or its rents and profits are in danger of being lost, materially injured or impaired.  *Williams v. Liggett*, 113 N.C. App 812, 815 (1994) (*citing* G.S. 1-502).

[82]     The court also has authority to describe the powers and duties of the receiver in its appointing order.  G.S. 57C-6-02.2(c).  These powers may include the right of the receiver to "(1) [d]ispose of all or any part of the assets of the limited liability company wherever located, at a public or private sale, if authorized by the court; (2) [s]ue and defend in the receiver's own name as receiver of the limited liability company in all courts of this State; and (3) [e]xercise all of the powers of the company, through or

---

[18] Alternatively, Plaintiff alleges that dissolution and/or liquidation of CNC is necessary because CNC's assets are being misapplied or wasted.

in place of its managers, to the extent necessary to manage the affairs of the company in the best interests of its members." *Id.*

[83]     When a business is an active, solvent corporation or LLC, the appointment of a receiver should only take place in rare and drastic situations. *Id.* at 816, *citing Lowder v. All Star Mills, Inc.*, 301 N.C. 561, 577 (1981). Further, receivership is a harsh equitable remedy obtainable only when a legal remedy is inadequate and in the absence of another safe or expedient remedy. *Murphy v. Murphy*, 261 N.C. 95, 101 (1964), *citing Scoggins v. Gooch*, 211 N.C. 677, 680 (1937).

[84]     Plaintiff contends that the appointment of a receiver is appropriate and necessary in the instant case because the facts alleged, if proven, establish that there is a substantial risk that profits of CNC are in danger of being lost, materially injured or impaired at the hands of CSCI and/or CHCI. Plaintiff bases its arguments on its contentions that CHCI appears to have made unauthorized distributions from CNC to itself and affiliated entities, as indicated on the internal statement for the year ending December 31, 2006. According to Plaintiff, this document indicates net distributions to CHCI and CSCI of $1,781,000. Plaintiff contends that CHCI should instead have contributed on a net basis $2,342,000 in cash to purchase the equity interests of Priority Members other than Plaintiff. Plaintiff essentially seeks a receiver to oversee the expenditure of CNC's assets to prevent unauthorized cash distributions to CHCI because such distributions, if made, are at substantial risk of being lost due to "financial difficulties" that may affect CSCI in the coming year.

[85]     Defendants argue that (a) Plaintiff has not met its burden for an appointment of a receiver; (b) neither G.S. 1-502 nor G.S. 57C-6-02.2 allow for a partial

management receiver; (c) Plaintiff has a legal remedy available to it and (d) because CNC is an active, solvent company and this is not a rare or drastic situation, receivership would be inappropriate. Defendants further argue that CHCI's discretionary power, under the clear provisions of the Operating Agreement, to make determinations as to whether any profits should be distributed to members is not grounds for appointment of a receiver.

[86]    The court concludes that while partial receivership may be permissible in some cases, imposing a partial receivership in this case would be inconsistent with the generally limited application of receiverships. Moreover, the court concludes that the facts alleged in the Plaintiff's motion do not present such a rare and drastic situation that receivership is the only proper remedy available to the Plaintiff. As such, the court concludes that appointment of a receiver at this stage of the proceedings is inappropriate.

[87]    Therefore, in the exercise of its discretion, the court concludes that Plaintiff's Receiver Motion should be DENIED.

V.

ORDER

[88]    NOW THEREFORE, based upon the foregoing CONCLUSIONS, it is ORDERED that:

      a.    Defendants' Motion to Dismiss the Amended Complaint is DENIED;

      b.    Defendants' Motion for a More Definite Statement is DENIED;

      c.    Defendants' Motion to Stay Proceedings Pursuant to G.S. 57C-8-01(b) is DENIED; and

d.	Plaintiff's Motion for Appointment of Receiver Pursuant to G.S. 57C-6-02.2 is DENIED.

This the <u>13th</u> day of November, 2009.